[S. F. No. 2242.  In Bank.—September 30, 1903.]

# E. O. MILLER, and HOME OIL COMPANY, Respondents, v. A. Y. CHRISMAN et al., Defendants, Appellants; J. W. FEWEL, Intervener, Appellant.

Mining Claims—Oil Lands—Requirements for Location.—Under the act of Congress of 1897, the location of oil claims is governed by the mineral laws of the United States applicable to the location of placer-mining claims.  To constitute an effective location thereof, the location must be distinctly marked upon the ground so that its boundares can readily be traced, and there must be a discovery of oil within the limits of the land located.

Id.—Discovery, How Constituted—Surface Indications.—To constitute a discovery of oil, the law requires something more than conjecture, hope, or ordinary surface indications, such as the seepage of oil, and the geological formation of the country, indicating the likelihood of oil in paying quantities.  There must be an actual discovery of oil by boring beneath the surface.

Id.—Time for Discovery—Effect upon Location.—It is not essential to the validity of a location of oil land, that the actual discovery of oil in paying quantities shall precede or coexist with the posting of the notice of location, and the demarcation of boundaries.  The discovery, when made subsequently, operates to perfect the location against all the world, saving those whose *bona fide* rights have intervened.

Id.—Good Faith—Diligence—Protection of Possession.—One who in good faith makes his location, remains in possession, and with due diligence prosecutes his work toward a discovery is fully protected against all forms of forcible, fraudulent, surreptitious, or clandestine entries and intrusions upon his possession.  An entry for location upon a previously located claim must always be peaceable, open, and above board, and made in good faith, or no right can be founded upon it.

Id.—Abandonment of Invalid Claim—New Location.—Where a prior location has no validity, there is no occasion for one of the locators to abandon it before he can unite with other locators in making a new valid location.

Id.—Failure of Work—Absence of Discovery—Peaceable Entry and Location—Valid Title.—Where there is an absence of discovery of

oil within a prior location, and no work is done to protect the posses-
sion of the prior locators, their location is void, and subsequent lo-
cators entering openly and peaceably in good faith, and making
another location, which they proceed to protect by diligent prose-
cution of work to the discovery of oil in paying quantities, acquire a
valid title as against the prior locators.

ID.—LOCATION BY ASSOCIATION OF PERSONS—SINGLE LOCATION—SINGLE
DISCOVERY.—A location of one hundred and sixty acres by an as-
sociation of eight persons is one single location of the whole, for
the purposes of marking of boundaries, of doing assessment-work,
and of procuring a patent; and only a single discovery of oil in
paying quantities within the boundaries of the claim is required
to support it.

ID.—CONVEYANCE BY LOCATORS BEFORE DISCOVERY.—The rights acquired
by *bona fide* locators, who are in possession of a claim of one hun-
dred and sixty acres, may be transferred to one of their number
before discovery, and the subsequent discovery of oil by his lessee
will perfect the entire original location. [Beatty, C. J., dissenting.]

APPEAL from a judgment of the Superior Court of Fresno
County and from an order denying a new trial. J. R. Webb,
Judge.

The facts are stated in the opinion of the court.

W. R. McQuiddy, Austin & Jones, George W. Jones, Reddy,
Campbell & Metson, and Campbell, Metson & Campbell, for
Appellants.

The discovery of mineral is sufficient to protect a location.
It need not be found in paying quantities. (*Castle* v. *Womble,*
19 L. D. 455; *Tam* v. *Story,* 24 L. D. 442; *Book* v. *Justice Min.
Co.,* 58 Fed. 120-125; Lindley on Mines and Mining, sec. 376;
*United States* v. *Iron S. M. Co.,* 128 U. S. 673; *Deffeback*
v. *Hawke,* 115 U. S. 392; *Davis* v. *Weibold,* 139 U. S. 517;
*Dower* v. *Richards,* 151 U. S. 658.) Lands are not open to
relocation until the right of the former locators have come to
an end. (*Belk* v. *Meagher,* 104 U. S. 279; *Landsdale* v. *Daniels,*
100 U. S. 116; *Jordan* v. *Duke,* 36 Fed. 896; *Souter* v. *Maguire,*
78 Cal. 545.) The abandonment by E. V. Miller of the former
location was invalid. (*Stevens* v. *Mansfield,* 11 Cal. 363; *St.
John* v. *Kidd,* 26 Cal. 263; *Judson* v. *Malloy,* 40 Cal. 299; *Utt*
v. *Frey,* 106 Cal. 392; *Trevaskis* v. *Peard,* 111 Cal. 599;
*Harkrader* v. *Carroll,* 76 Fed. 475.) Discovery of mineral is

the source of the miner's title. (U. S. Rev. Stats., secs. 2318, 2319; Lindley on Mines and Mining, sec. 330; *O'Reilly* v. *Campbell,* 116 U. S. 410; *Nevada Sierra Oil Co.* v. *Miller,* 98 Fed. 673; *Waterloo Min. Co.* v. *Doe,* 56 Fed. 685; *Hauswirth* v. *Butcher,* 4 Mont. 299; *Ettlin* v. *Potter,* 17 L. D. 424; *North Noonday Min. Co.* v. *Orient Min. Co.,* 1 Fed. 22; *Jupiter Min. Co.* v. *Bodie Cons. Min. Co.,* 11 Fed. 666; *Erhardt* v. *Boaro,* 113 U. S. 222; *King* v. *Amy etc. Co.,* 152 U. S. 222; *Pelican etc. Min. Co.* v. *Snodgrass,* 9 Colo. 339; *Upton* v. *Larkin,* 5 Mont. 600; *Crossman* v. *Pendery,* 2 McCrary, 137; *Ledorex* v. *Forester,* 94 Fed. 600; *Erwin* v. *Perego,* 93 Fed. 608.) The Miller location included dummies, and was not valid. (*Mitchell* v. *Cline,* 84 Cal. 400; *Gird* v. *California Oil Co.,* 60 Fed. 53; *Durant* v. *Corbin,* 94 Fed. 382.) Possession without a valid location confers no right as against a lawful entry by a competent locator. (20 Am. & Eng. Ency. of Law, 2d ed., p. 724; 1 Lindley on Mines and Mining, 2d ed., p. 376; *Horsewell* v. *Ruiz,* 67 Cal. 111; *Adams* v. *Crawford,* 116 Cal. 495; *Deffeback* v. *Hawke,* 115 U. S. 392; *Beals* v. *Cone,* 27 Colo. 473;[1] *Crossman* v. *Pendery,* 112 Fed. 4; *Thallman* v. *Thomas,* 111 Fed. 277; *Patterson* v. *Tarbell,* 26 Or. 34.)

J. W. McKinley, J. H. Call, and Charles H. McFarland *Amici Curiæ,* for Appellants on Petition for Rehearing.

A discovery is not required in placer claims. (*Gregory* v. *Pershbaker,* 73 Cal. 101, 116.) It is only veins or lodes that require a discovery, and very slight evidence of ore in a vein or lode is sufficient. (*Iron Silver Min. Co.* v. *Cheeseman,* 116 U. S. 529, 536; *Iron Silver Min. Co.* v. *Mike Co.,* 143 U. S. 394, 404, 405; *Book* v. *Justice Min. Co.,* 58 Fed. 106, 120, 125; *Meydenbauer* v. *Steven,* 78 Fed. 787, 790, 791; *Bonner* v. *Meikle,* 82 Fed. 697, 702, 703; *Shoshone Min. Co.* v. *Rutter,* 87 Fed. 801, 808.)

E. O. Larkins, U. T. Clotfelter, W. S. Badger, and Edward A. Meserve, for Intervener, Appellant.

Respondents hold under a worthless location. There must be a prior discovery to justify location. (U. S. Rev. Stats., sec. 2319; *Nevada Sierra Oil Co.* v. *Home Oil Co.,* 98 Fed. 673.)

---

[1] 83 Am. St. Rep. 92.

Respondents had no right of property prior to the date of discovery of oil by the Home Oil Company, and their conveyances conveyed nothing. Miller only had the right to take up twenty acres based on the discovery. (*Gird* v. *California Oil Co.,* 60 Fed. 531; U. S. Rev. Stats. sec. 2331.) There being no such location, intervener's location was valid.

L. L. Cory, M. K. Harris, N. C. Colwell, and Frank H. Short, for Respondents.

A location is made valid only by an actual discovery of mineral. (*King* v. *Mining Co.,* 152 U. S. 227; *Harrington* v. *Chambers,* 3 Utah, 94; *Shreve* v. *Copper Bell Min. Co.,* 11 Mont. 309; *Book* v. *Justice Min. Co.,* 58 Fed. 106; *Waterloo Min. Co.* v. *Doe,* 56 Fed. 685; *Nevada Sierra Oil Co.* v. *Home Oil Co.,* 98 Fed. 673.) No work was done or discovery made to protect the Barieau location, and the claim was subject to peaceable location by other parties. The subsequent discovery perfected the second location, there being no intervening right. (1 Lindley on Mines and Mining, 330; *Jupiter Min. Co.* v. *Bodie Cons. Min. Co.,* 11 Fed. 661; *North Noonday Min. Co.* v. *Orient Min. Co.,* 1 Fed. 522; *Erwin* v. *Perego,* 93 Fed. 608; *Erhardt* v. *Boaro,* 113 U. S. 527; *Thompson* v. *Spray,* 72 Cal. 528; *Crossman* v. *Pendery,* 2 McCrary, 137.) A single discovery is all that.is necessary to protect a single location of one hundred and sixty acres. (*In re Union Oil Co.,* 25 L. D. 358; *McDonald* v. *Montana Wood Co.,* 14 Mont. 91.[1]) The intervener could not initiate any right by a clandestine entry upon land in the actual possession of respondents. (*Atherton* v. *Fowler,* 96 U. S. 513; *Nevada Sierra Oil Co.* v. *Home Oil Co.,* 98 Fed. 673; *Phœnix Min. and M. Co.* v. *Lawrence,* 55 Cal. 143.)

C. Linkenbach, and R. H. Countryman, *Amici Curiæ,* for Respondents.

An association of persons who take up one hundred and sixty acres have a single claim, and only a single discovery is required to protect it. (*In re Union Oil Co.,* 25 L. D. 358; *Reuss* v. *Raunheim,* 28 L. D. 529; *McDonald* v. *Montana Wood Co.,* 14 Mont. 88.[1])

---

[1] 43 Am. St. Rep. 616.

HENSHAW, J.—This action is to quiet title to the north-east quarter of section 20, township 19 south, range 15 east, Mount Diablo base and meridian, in the county of Fresno, state of California. All parties claim by virtue of locations made under the mineral laws of the United States.

It is admitted that in the year 1895 the land in controversy was a part of the public domain of the United States, and open to exploration under its mineral laws. Upon the four-teenth day of June, 1895, one A. Barieau, on behalf of himself and seven others, as associates, went upon the land and posted a location notice. Nothing further was done until the month of January following, when Barieau entered upon the land with a surveyor and marked the boundaries of the location upon the ground. Upon the twenty-fourth day of December, 1896, the interests of Barieau's seven associates passed to E. O. Miller, plaintiff herein, by mesne conveyance. There-after, on the 31st of December, 1896, Miller executed a pur-ported abandonment and relinquishment of his right, title, and interest to the land in controversy to the United States, and on the same day made a location on behalf of himself and seven associates. Upon January 1, 1897, the defendants Chris-man made their location; while upon the twenty-second day of December, 1898, more than two months after the com-mencement of this action, and in the night-time, the inter-vener, with H. T. Chrisman, entered upon the land and made still another location covering a part of it. After trial the court found in favor of plaintiff's location, against the loca-tions of defendants and the intervener, and judgment passed accordingly.

Defendants and intervener make common cause upon most of the matters presented upon appeal. Their contentions are:—

1. That the location by Barieau and others upon the 14th of June, 1895, was a valid location, which divested the land of its *status* as part of the public domain, and appropriated it to private claim and dominion until the end of the year 1896.

2. That, therefore, Miller's attempted location upon Decem-ber 31, 1896, was void, because made at a time when there was a valid subsisting location upon the land; because it was not based on a discovery, and was not perfected by a subse-

quent discovery until the rights of others parties attached; because the location was in fact made only by Miller, Hall, and Hannah, the other five co-locators being mere dummies; and, finally, because the boundaries of the location were not marked upon the ground so that they could be readily traced.

3. That no assessment-work whatsoever having been done upon the land in question during the year 1896, by or on behalf of Barieau and his co-locators, the Barieau location lapsed, and on the first day of January, 1897, the land again became open for exploration and location, and was so open at the time that defendants made their locations upon January 1, 1897; that their locations were, and at all times have been, valid subsisting locations.

It will thus be noted that none of the appellants claims under the Barieau location, nor contends that he has acquired any of the rights of those locators. It is agreed that if the Barieau location was in all other respects a valid location, it lapsed at the end of the year 1896, by failure to perform the statutory amount of labor. If, however, the Barieau location was an invalid location, as the court finds, then the lands were open to notorious, peaceable, and *bona fide* entry by others for the purpose of initiating a new location. The findings of the court, as has been said, were against the validity of the Barieau location. We are satisfied that it was invalid for at least one reason. Barieau and his co-locators did not at the time of their attempted location, nor ever, make any discovery of mineral upon the land.

In considering this proposition, it should be said that the mineral upon these lands is oil. Under the act of Congress of 1897, the location of oil claims is governed by the mineral laws of the United States applicable to the location of placer-mining claims. The two requirements admittedly essential to the validity of a location such as this are, that the location must be distinctly marked upon the ground so that the boundaries can be readily traced, and that there must be a discovery of minerals within the limits of the land located. (U. S. Rev. Stats., sec. 2324; U. S. Comp. Stats. 1901, p. 1426.) Upon the question of discovery the sole evidence is that of Barieau himself. Giving fullest weight to that testimony, it amounts to no more than this, that Barieau had walked

over the land at the time he posted his notice and had discovered "indications" of petroleum. Specifically, he says that he saw a spring, and "the oil comes out and floats over the water in the summer-time when it is hot. In June, 1895, there was a little water with oil and a little oil with the water coming out. It was dripping over a rock about two feet high. There was no pool; it was just dripping a little water and oil, not much water." This is all of the "discovery" which it is even pretended was made under the Barieau location, and we think it clear that such testimony does not establish a discovery within the meaning of the law. To constitute a discovery, the law requires something more than conjecture, hope, or even indications. The geological formation of the country may be such as scientific research and practical experience have shown to be likely to yield oil in paying quantities. Taken with this, there may be other surface indications, such as seepage of oil. All these things combined may be sufficient to justify the expectation and hope that, upon driving a well to sufficient depth, oil may be discovered, but one and all they do not in and of themselves amount to a discovery. This view finds support in the *Nevada Sierra Oil Co.* v. *Home Oil Co.*, 98 Fed. 673, where the circuit court was dealing with this precise question, in regard to this precise piece of land, under these identical circumstances. While perhaps it would be stating it too broadly to say that no case can be imagined where a surface discovery may be made of oil sufficient to fill the requirements of the statute, yet it is certainly true that no such case has ever been presented to our attention, and that in the nature of things such a case will seldom, if ever, occur. Nor does the view which we entertain of the essentials of a valid discovery as applied to oil-bearing lands present any points of hardship, but, to the contrary, we think it to be not alone the only rational one which may be taken under the law, but also the only interpretation which offers security and protection to the *bona fide* locator. It is to be remembered that it is not essential to the validity of a location that the discovery shall have preceded or shall coexist with the posting of the notice and the demarcation of boundaries. The discovery may be made subsequently, and when made operates

to perfect the location against all the world, saving those whose *bona fide* rights have intervened. One who thus in good faith makes his location, remains in possession, and with due diligence prosecutes his work toward a discovery, is fully protected against all forms of forcible, fraudulent, surreptitious, or clandestine entries and intrusions upon his possession. Such entry must always be peaceable, open and above board, and made in good faith, or no right can be founded upon it. (*Belk* v. *Meagher,* 104 U. S. 279; *Atherton* v. *Fowler,* 96 U. S. 513; *Nevada Sierra Oil Co.* v. *Home Oil Co.,* 98 Fed. 673.)

It was just such a peaceable, open entry upon the land that Miller and his associates made upon December 31, 1896. No discovery had been made under the Barieau location. No work at all had been done to protect it, and in consequence it could not be said that Barieau and his associates were in the actual *bona fide* possession of their claim and developing it under the requirements of the statute. This being the case, it was the right of any person or association of persons to enter peaceably and openly, as was done by Miller and his associates.

It thus having been determined that the initiation of the claim of Miller and his associates was founded in right, there remains to be considered the objections urged against the validity of that location. And, first, it is insisted that the location is invalid because -Miller, prior to his location, but upon the same day, executed an abandonment to the government of all rights under the Barieau location, and it is contended that this invalidated the location subsequently made, because such pretended abandonment was not made in good faith, but was designed as a fraud upon the United States, to evade the performance of the assessment-work required by law. But the answer to this is, that the court upon sufficient evidence finds against this contention, and furthermore, as the Barieau location was itself invalid, there was no occasion for an abandonment of it, because there was nothing to abandon. As to other objections made to the validity of the Miller location, it is sufficient to say, without discussing the evidence, that the court was justified in its finding that the requirements of the posting of a sufficient notice and de-

marcation of boundaries were all complied with in accordance
with law.·· So, too, the evidence warrants the findings of the
court that the persons named as co-locators in the Miller
location were *bona fide* locators, and that the location was
made for the benefit of them all. Likewise, upon sufficient
evidence, the court's finding negatives the charge of fraud,
collusion, and conspiracy upon the part of these locators.

It is disclosed by the evidence that Miller, his associates
and lessees, remained in possession of the land, and with
diligence and at great expense prosecuted the work of boring
wells. This work finally resulted in success; oil was dis-
covered in paying quantities, and the land became extremely
valuable. Plaintiffs thus not only made a discovery, but they
are the only ones of all the alleged locators who have done
so. It has been said that it is not necessary that discovery
should precede nor coexist with the posting of notice and the
marking of the claim, but that a discovery subsequently made
perfects the title, except so far as the rights of others may
have intervened. This proposition is perhaps too well recog-
nized to require citation of authorities, but reference may
be made to 1 Lindley on Mines and Mining, sec. 330; *Jupiter
Min. Co.* v. *Bodie Con. Min. Co.,* 11 Fed. 666; *North Noonday
Min. Co.* v. *Orient Min. Co.,* 1 Fed. 522; *Thompson* v. *Spray,*
72 Cal. 528; *Erwin* v. *Perego,* 93 Fed. 608; *Erhardt* v. *Boaro,*
113 U. S. 527; *English* v. *Johnson,* 17 Cal. 108.[1] The alleged
discovery of defendants under their location may be disposed
of in a sentence. It amounted to no more than the pretended
discovery made by Barieau. It results, therefore, that be-
tween the date of the Miller location and the date of the
Miller discovery no rights had intervened, and the possessory
title of the holders under the Miller location was justly
quieted against the adverse claimants.

It is against this, however, still further contended that,
notwithstanding the fact that the location on behalf of Miller
and his associates embraced one hundred and sixty acres in
common, and notwithstanding the fact that they had driven
successful wells upon the different parts of the land, yet, as
at the time of the institution of the suit they had not actually
driven a well and discovered oil upon those portions of the

[1] 76 Am. Dec. 574.

quarter-section claimed by the defendants, plaintiffs' claim of title is void as to each of those twenty acres upon which actual discovery has not been made. But a location made by an association of persons, by the very terms of the law, is one location covering one hundred and sixty acres, and not eight locations, each covering twenty acres. The boundaries required to be marked are the boundaries of the one hundred and sixty acres, and not the boundaries of each separate twenty acres. The expenditure of five hundred dollars before patent issues is an expenditure required upon the whole land, and not an expenditure upon the twenty-acre subdivisions thereof, and the only assessment-work required is labor to the value of one hundred dollars upon the single location, and not upon any twenty-acre subdivision thereof. Logically, therefore, since in marking boundaries, doing assessment-work, and expenditure for patent the one hundred and sixty acres are treated as an entirety under one location, for the purpose of discovery it should be treated in the same manner, and this is the ruling, with some conflict in its earlier decisions, which the land office of the United States has finally returned to and settled upon. In the case of *Union Oil Co.,* 25 L. D. 351, it is explicitly declared: ''A placer location, if made by an association of persons, may include as much as one hundred and sixty acres. It is nevertheless a single location, and as such only a single discovery is by the statute required to support it.'' With this declaration we are in full accord.

The claim of intervener scarcely merits even a passing notice. The record shows that his alleged location was made upon the twenty-second day of December, 1898, after the institution of this action, and long after the plaintiffs had sunk their wells and discovered oil. The intervener knew that at the time of his alleged discovery the Home Oil Company was in the occupancy of the territory. He entered upon the land and located his claim between the hours of 9 and 11 o'clock at night. He adopted for his boundaries the existing boundaries, and his discovery consisted in observing the oil which was coming from plaintiffs' well. Such a fraudulent, surreptitious, and clandestine entry upon the possession of another cannot be made the basis of any right. (*Atherton* v. *Fowler,* 96 U. S. 513.)

It appears that Miller, his co-locators, and other successors. in interest remained in the actual and undisturbed possession of the entire property from the date of their location until the commencement of this action. It appears further that upon the thirty-first day of July, 1897, and before any discovery of oil had been made, Miller's associates and co-locators executed to him a deed of all their right, title, and interest in the property. Subsequently, and upon the seventeenth day of September, 1897, Miller executed a lease of the premises, which lease was transferred to the plaintiff Home Oil Company. The Home Oil Company thereupon took possession of the premises, bored for, and in the month of October, 1897, struck oil and made the first discovery upon the land in question. Upon this state of facts intervener contends that the location was invalid; that the effect of the conveyance of his co-locators to Miller before discovery operated as an abandonment by them of their location, and destroyed the validity of the whole location; that the validity of the location thus having been destroyed, the subsequent discovery of oil did not, and could not, serve to validate it, and at the most could have given Miller, as the sole remaining member of the association, the right to relocate twenty acres about his discovery.

Stating the proposition in a sentence it is this: Where a location has been made by associates, those associates have no right or title which they can convey before the location is perfected by discovery, and their attempt to convey results in an abandonment of their claim, and in the destruction of the whole location. It sufficiently appears from what has heretofore been said that a location such as this, made by eight associates, is but a single location, each associate having an undivided eighth interest in the whole. It further appears that certain valuable rights become the property of such locators even before discovery. They have the right of possession against all intruders (*Garthe* v. *Hart,* 73 Cal. 541), and they may defend this possession in the courts. (*Richardson* v. *McNulty,* 24 Cal. 339.) They have then this right of possession and with it the right to protect their possession against all illegal intrusions, and to work the land for the valuable minerals it is thought to contain. We cannot perceive

why these rights may not in good faith be made the subject of conveyance by the associates as well before as after discovery. There is certainly nothing in the expressed law upon the subject to lead to the view that this cannot be done, and there is much to give countenance to the contrary conviction. Thus the law expressly provides that if one of the co-locators abandons his claim or interest, by refusing to bear his proportion of the cost of the assessment-work, such abandonment does not, as would be claimed, work the destruction of the whole location, but "his interest in the claim shall become the property of his co-owners who have made the required expenditures." (U. S. Rev. Stats., sec. 2324; U. S. Comp. Stats. 1901, p. 1426.) It is to be borne in mind that a location such as this, though it contains one hundred and sixty acres, is still a single location, a single claim, with undivided interests, covering the whole of it. Any work done upon the claim is done for the benefit of all the co-locators. It is undisputed that when the location has once been perfected one of the associates may by conveyance acquire all of the rights of his fellows, and we can perceive no reason why the right to prosecute the work and perfect such a location by discovery may not itself be vested in a single one of them. If, instead of conveying, the seven associates had stood idle and refused to contribute their share to the necessary work of developing, and Miller under these circumstances had alone prosecuted the work to a successful discovery, no one could contend in the face of section 2324 of the Revised Statutes of the United States, but that Miller would have acquired the rights of all, and would have had a perfected location covering the whole one hundred and sixty acres. If, then, by their abandonment, without a conveyance, Miller would have acquired the right to prosecute the work and perfect the whole location for himself individually, it is impossible to see why a conveyance to him of their right, instead of an abandonment of it by a refusal to join in the work, should effectuate any different result.

For the foregoing reasons the judgment and order appealed from are affirmed.

McFarland, J., Van Dyke, J., Angellotti, J., and Lorigan, J., concurred.

Rehearing denied October 31, 1903. Beatty, C. J.. delivered the following 'dissenting opinion:—

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause. There can be no location of a mining claim before discovery, and there can be no transfer or assignment of a location before the location is complete. There can, in other words, be no assignment of the right to locate. If, in the expectation of discovery, an association of persons marks the boundary of a placer claim containing twenty acres for each associate, I have no doubt that they will be protected in their possession while they proceed with reasonable diligence to prospect the claim, and that by a discovery they will perfect it; but if some of the associates withdraw before discovery or attempt to assign their claims to those who continue the work of development, those who remain will have no right to a claim greater in the aggregate than they could have taken by an original location.