CHARLTON et al. v. KELLY et al.

(Third Division. Fairbanks. 1905-1906.)

No. 373.

1. MINES AND MINERALS—PLACER MINE—LOCATION—REQUISITES.
    To establish a valid placer mining location in Alaska it is necessary: (1) To mark the boundaries so that they can be readily traced; (2) to record a notice of location within 90 days from the date of the discovery of the claim; and (3) to make a discovery of mineral within the limits of the claim.
    [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, §§ 42, 45-50, 27.]

2. SAME—ORDER OF ACTS.
    The order in which the necessary acts of location of a valid placer mining location are made is not material, provided that they all shall have been completed before the rights of others have intervened.

3. SAME—RECOVERY OF POSSESSION—QUESTIONS FOR JURY.

Whether (1) A placer mining location is so marked that its boundaries can be readily traced; (2) the notice of location is recorded within 90 days and describes the claim; (3) there has been a discovery of mineral on or within the claim; or (4) the locator had actual possession at the time of the entry of a subsequent location—are questions for the jury in ejectment.

4. SAME—MARKING BOUNDARIES.

Whether the boundaries of a placer mining claim are so marked that they can be readily traced depends somewhat upon the conformation of the ground and the surrounding conditions. Where the country is broken or the view from one stake or monument to another is obstructed by intervening timber or brush, it may be necessary to blaze trees along the line or cut away the brush, or set more stakes at such distances that they may be seen from one to the other, in a way to indicate the lines, so that the boundaries can be readily traced. Stakes set at each corner of the claim, with center end stakes, together with some reference to other natural objects or permanent monuments, such as another well-known claim or group of claims, is a sufficient compliance with the statute.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, §§ 40–44.]

5. SAME—RECORDING NOTICE.

In Alaska it is necessary to record the location notice within 90 days from the discovery of the claim in the recording precinct in which the claim lies. The notice must contain the name or names of the locators, the date of the location, and such a description of the claim, by reference to some natural object or permanent monument, as will identify the claim.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, §§ 45-47.]

6. SAME—DISCOVERY OF MINERAL—DEFINITION.

Where mineral has been found, and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met. The facts which are within the observation of the discoverer, and which induce him to locate, should be such as would justify a man of ordinary pru-

dence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, §§ 24–28.]

## 7. SAME—MERE WILLINGNESS TO DEVELOP INSUFFICIENT.

A mere willingness on the part of the prospector to further expend his labor and means is not sufficient; the question should not be left to the arbitrary will of the locator. Willingness, unless evidenced by actual exploitation, could not be satisfactorily proved.

## 8. SAME—DISCOVERY—QUESTIONS FOR JURY.

It is for the jury to determine whether the locator actually found mineral on or in the claim, and, if so, whether it was of such quantity and character, and found under such conditions, as to constitute a discovery, and whether such finding would justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property.

## 9. SAME—MERE INDICATIONS OF MINERAL INSUFFICIENT.

Mere indications, however strong, are not sufficient to answer the requirements of the statute, which requires as one of the essential conditions of the making of a valid mining location a discovery of mineral within the limits of the claim. An "indication," in this sense, means that which merely points to or tends to prove.

## 10. SAME—POSSESSION AND WORK ON MINING CLAIM.

If a qualified locator shall mark the boundaries of a placer claim, and record his notice in time, and shall enter into the actual possession of the claim for the purpose of discovery or development, so long as he remains in the actual possession of the claim, and is engaged, in good faith, in the labor of making a discovery, he is entitled to the protection of the law.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, § 28.]

## 11. SAME—ABANDONMENT—TEMPORARY ABSENCE PRIOR TO DISCOVERY.

Where a prospector has marked the boundaries of his claim and recorded, and is in actual possession, and in good faith attempting to comply with the mining laws in the matter of making a discovery, and has in good faith temporarily gone away from his claim for the purpose of purchasing provisions or supplies, or for any other temporary purpose, and intending to return and resume his actual occupation, possession, and labors,

*held,* such temporary absence not to be considered an abandonment of his rights to the ground, and that no entry during such temporary absence would initiate any right thereto.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, § 60.]

12. SAME—WHAT CONSTITUTES POSSESSION OF A MINING CLAIM.

Acts necessary to show actual possession of lands should be considered from the character of the ground. It is not necessary to fence a mining claim, to plow or raise crops thereon. A placer mining claim is possessed by marking the boundaries, recording the location notice, the discovery of gold, by sinking holes to discover the pay streak, by hoisting pay dirt, sluicing, and cleaning up. Tents, houses, and actual residence therein on the claim are additional evidence of possession, though not necessary to constitute legal possession.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, §§ 30, 102½.]

13. SAME—CASUAL VISITS AND TENT AND TOOLS INSUFFICIENT.

Merely placing a tent and a few tools and a small supply of provisions upon a placer mining claim do not alone and of themselves constitute actual possession thereof.

14. SAME — CONFLICTING CLAIMS — PEACEABLE ENTRY UPON PRIOR POSSESSION.

If a party goes upon the mineral lands of the United States, and either establishes a settlement or works thereon, without complying with the requirements of the mining laws, and relies exclusively upon his possession or work, a second party, who locates peaceably a mining claim covering any portion of the same ground, and in all respects complies with the requirements of the mining laws, is entitled to the possession of such mineral ground to the extent of his location as against the prior occupant, who is, from the time said second party has perfected his location and complied with the law, a trespasser.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, §§ 63–65.]

This is an action in ejectment instituted by the plaintiffs to recover from the defendants the possession of a piece of mining property. The plaintiffs in their complaint say that they are, and ever since the 11th day of August, 1904, have been, the owners in fee simple, subject only to the paramount title

of the United States, and entitled to the possession of that certain mining property situate in said district, and known as upper No. 6 below discovery, second tier of benches, on the right limit of Dome creek, the same being opposite to and adjoining the upper portion, on the easterly side line of bench claim No. 6 below discovery, first tier, right limit of said Dome creek, and being 660 feet more or less in width and 1,320 feet more or less in length; that on or about the 1st day of July, '1905, the defendant James Kelly wrongfully entered upon said property so described, and ousted and ejected the plaintiffs therefrom, and now wrongfully withholds the same from the plaintiffs, to plaintiffs' damage in the sum of $5,000.

The defendant Kelly in his answer denies the allegations of the plaintiffs' complaint, and sets up as a further and affirmative defense that ever since the 26th day of June, 1905, he has been the owner and entitled to the possession of that certain placer mining claim known as No. 6 below discovery on the right limit, third tier of benches on Dome creek, in the Fairbanks recording district, territory of Alaska, and that the plaintiffs have no right, title, or estate therein. The affirmative allegations of the answer are denied by the reply of the plaintiffs. The jury found for the defendants.

Jeremiah Cousby, Heilig & Tozier, for plaintiffs.
McGinn & Sullivan, for defendants.

WICKERSHAM, District Judge (instructing jury). You are instructed that the mining claim so described by the plaintiffs is covered by a portion of the mining claim so described by the defendants, and that it is the conflicting area which is in dispute in this case. The question, therefore, for you to determine by your verdict is, Who is the owner and entitled to the possession of the property in dispute in this action?

You are instructed that all valuable mineral deposits in lands belonging to the United States in Alaska are free and open to

exploration and purchase by citizens of the United States under the regulations prescribed by law. The regulations that have been prescribed by law in order to make a valid location of a mining claim in the territory of Alaska are: First. A discovery of mineral upon or within the ground to be located. Second. A marking of the boundaries of the property upon the ground, so that the same can be readily traced. Third. The recording of a notice of location within 90 days from the date of the discovery of the claim described in the notice with the recorder of the recording district in which the said property is located. The order in which these acts are to be done is immaterial, provided they all shall have been completed before the rights of others have intervened. It is not essential that the discovery shall precede or co-exist with the demarkation of the boundaries and the recording of the notice of location. The discovery may be made subsequent, and when made operates to perfect the location against the whole world, save those whose bona fide rights have intervened. But you must bear in mind that all three of these acts must be completed before sufficient title passes from the government of the United States to the claimant of the ground sufficient to maintain an action in ejectment such as this is, except that I instruct you that whenever a claimant of mineral ground in Alaska shall have marked the location thereof by stakes or other permanent monuments, so that the boundaries thereof can be readily traced, and shall have filed with the recorder a notice of the location within 90 days from the date of the discovery of the claim, and shall be in the actual possession of the ground, attempting in good faith to make a discovery thereon, he is as much entitled to the protection of the law and to maintain an action of ejectment, if ousted, as if he had actually made a discovery.

1. Your first inquiry, then, will be: Was the location so asserted by the plaintiffs in this action so definitely marked

upon the ground and in such a manner that the boundaries could be readily traced prior to the intervention of defendants' rights? This is a question for you to determine under all the circumstances in the case, and depends somewhat upon the conformation of the ground and the surrounding conditions. What may be sufficient in the case of a comparatively level and bare surface might not necessarily meet the requirements of the law in a hilly or brushy country.

You are instructed that a claim may be marked upon the ground by stakes or other permanent monuments, but you are instructed that the law requires a claim to be so distinctly marked upon the ground that its boundaries can be readily traced. The requirements of the statute in this respect are not necessarily fulfilled by merely setting stakes at each of the corners of the claim and at the center of the end line, unless the topography of the ground and the surrounding conditions are such that a person accustomed to tracing lines of mining claims can, after reading a description of the claim in the posted or recorded notice of location or upon the stakes, by a reasonable and bona fide effort to do so, find all of the stakes, and thereby readily trace the boundaries. Where the country is broken or the view from one stake or monument to another is obstructed by intervening timber or brush, it may be necessary to blaze trees along the line, or cut away the brush, or set more stakes at such distances that they may be seen from one to the other, in a way to indicate the lines, so that the boundaries can be readily traced. But it is not for the court to say what is a sufficient marking of the boundaries. It is your duty to determine from all the evidence in the case and from the topography of the ground in question whether or not a sufficient marking of the boundaries of the claim by the plaintiffs was made so that the same could be readily traced by a person making a reasonable effort to do so. If you find from the evidence in this case that this location was so definite-

ly marked on the ground by the plaintiffs or their agents that its boundaries could be readily traced, then I instruct you that the plaintiffs have complied with this requirement of the law; if not, then I instruct you that they have failed in one of the essentials of a valid placer mining location, and that your verdict must be for the defendants.

2. The law requires, in addition to marking the boundaries, that the locator shall file a notice of the location of his mining claim for record within 90 days from the date of the discovery of the claim described in the notice with the commissioner and ex-officio recorder in and for the recording district in which the claim is located. And where a notice of location is required to be recorded, as it is here, it shall contain the name or names of the locators, the date of the location, and such a description of the claim, by reference to some natural objects or permanent monuments, as will identify the claim. You are instructed that stakes set at each corner of the claim with a center end stake, together with some reference to other natural objects or permanent monuments in that locality, such as another well-known claim or group of claims, is a sufficient compliance with this requirement of the statute. The law does not require absolute technical strictness in the preparation of a notice of location. The pioneer prospector, as a rule, is neither a lawyer nor a surveyor. Neither mathematical precision as to measurements nor technical accuracy of expression in the preparation of the notice is either contemplated or required. The object of the notice of location is to prevent the swinging of the claim or the changing of the boundaries, and to guide the subsequent locator, and to afford him information as to the extent of the claim of the prior locator. Whatever does this thoroughly and reasonably should be held to be a good notice. And in this case, if you shall find from the evidence that the plaintiffs did, within 90 days from the date of the discovery of their claim, file for record in the office of the recorder

in the precinct where the claim was situated a notice of location which did contain the name or names of the locators, the date of the location, and such a description of the claim located, by reference to some natural object or permanent monument, as would and did identify the claim, then you shall find that question in favor of the plaintiffs, otherwise against them.

3. A third requirement is that the plaintiffs shall make a discovery of mineral in or upon the claim. If you shall find from the evidence that plaintiffs marked the boundaries of their claim so that the same could be readily traced, and filed a notice of the location thereof within 90 days from the date of the discovery of their claim, which notice contained the name or names of the locators, the date of the location, and such a description of the claim, located by reference to some natural object or permanent monument, as would identify the claim, then you should consider the question of discovery. You are instructed that a mere marking of the boundaries of the claim and the posting and recording of a notice of location, alone and of themselves, give no title to the locator, nor do they constitute possession. One may mark the boundaries of a claim and record the notice of location thereof, but to make a complete valid placer mining location he must first make a discovery of mineral thereon. This, then, brings us to the third question in this case, to wit, that of discovery of mineral within the exterior boundaries of the claim. What is discovery? What finding of mineral on a mining claim is sufficient to comply with the law which requires "that no location of a mining claim shall be made until discovery" of mineral within the limits of the claim located? What is necessary to constitute a discovery of mineral within the limits of the claim located? What is necessary to constitute a discovery of mineral is not prescribed by statute, but the Supreme Court of the United States in a recent case has laid down the rule which must govern this court and this jury in answering the question, what is a discovery?

"Where mineral has been found, and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met. To hold otherwise would tend to make of little avail, if not entirely nugatory, that provision of the law whereby all valuable mineral deposits in land belonging to the United States are declared to be free and open to exploration and purchase."

Some courts have held that a mere willingness on the part of the locator to further expend his labor and means was a fair criterion, but it would seem that the question should not be left to the arbitrary will of the locator.

"Willingness, unless evidenced by actual exploitation, would be a mere mental state, which could not be satisfactorily proved. The facts which are within the observation of the discoverer, and which induce him to locate, should be such as would justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property."

And in the case from which I am now quoting (Chrisman v. Miller, 197 U. S. 313, 25 Sup. Ct. 468, 49 L. Ed. 770) the court further said:

"It is true that, when the controversy is between two mineral claimants, the rule respecting the sufficiency of a discovery of mineral is more liberal than when it is between a mineral claimant and one seeking to make an agricutural entry, for the reason that where land is sought to be taken out of the category of agricultural lands the evidence of its mineral character should be reasonably clear, while in respect to mineral lands, in a controversy between mineral claimants, the question is simply which is entitled to priority. That, it is true, is the case before us. But even in such a case, as shown by the authorities we have cited, there must be such a discovery of mineral as gives reasonable evidence of the fact either that there is a vein or lode carrying the precious mineral, or, if it be claimed as placer ground, that it is valuable for such mining."

The facts upon which discovery in Chrisman v. Miller were based are stated in the opinion of the Supreme Court of the United States as follows:

"Upon the question of discovery, the sole evidence is that of Barieau himself. Giving the fullest weight to that testimony, it amounts to no more than this: that Barieau had walked over the land at the time he posted his notice, and had discovered 'indications' of petroleum. Specifically, he says that he saw a spring, and the oil comes out and floats over the water in the summer time, when it is hot. In June, 1895, there was a little water with oil and a little oil with water coming out. It was dripping over a rock about two feet high. There was no pool; it was just dripping a little water and oil; not much water. This is all the discovery which it is even pretended was made under the Barieau location."

Petroleum oil is a mineral, and is located as a placer claim, and the same rules control in defining what is a discovery thereof as control in defining what is a discovery of gold, and in the case of the Barieau location, and upon the facts of surface discovery quoted, the Supreme Court of California held that there was no discovery, and the Supreme Court of the United States affirmed that rule and said:

"Giving full weight to the testimony of Barieau, we should not be justified, even in a case coming from a federal court, in overthrowing the finding that he made no discovery. There was not enough in what he claims to have seen to have justified a prudent person in the expenditure of money and labor in exploitation for petroleum. It merely suggested a possibility that the ground contained oil sufficient to make it chiefly valuable therefor."

And the Supreme Court of the United States affirmed the holding of the Supreme Court of California that such slight surface indications of oil did not constitute a discovery under the placer mining laws of the United States. You are now instructed that the rule so announced by the Supreme Court of the United States in Chrisman v. Miller, upon the facts so read to you, is applicable to this case, and, so far as the evidence in this case is similar to that, is binding upon the question of discovery.

Upon the facts so quoted by the Supreme Court of the United States from the opinion of the Supreme Court of California in the case of Chrisman v. Miller, the latter court (140 Cal.

440, 73 Pac. 1083, 98 Am. St. Rep. 63) said on the question of discovery:

"To constitute a discovery, the law requires something more than conjecture, hope, or even indications. The geological formation of the country may be such as scientific research and practical experience have shown to be likely to yield oil in paying quantities. Taken with this, there may be other surface indications, such as seepage of oil. All these things may be sufficient to justify the expectation and hope that, upon driving a well to sufficient depth, oil may be discovered, but one and all they do not in and of themselves amount to a discovery."

This case, including this definition of discovery, was affirmed upon appeal to the Supreme Court of the United States, and you are now instructed that the rule and definition so announced, in so far as it is applicable to the facts in the case before you, is binding upon you in determining the question of discovery in this case.

There is evidence offered by the plaintiffs to show that prior to June 26, 1905, when the defendant claims to have entered upon this ground and initiated his location, the plaintiffs, by A. J. Kelsey and John Klonos and Louis Schmidt, discovered gold by panning in a little draw on the claim in controversy. There is evidence offered to show that at that place these witnesses discovered colors of gold and even a few cents' worth in what is commonly called "muck" by the miners, being, however, in the bed of a little stream in the draw, and in rather heavier material than the ordinary muck. It is for you to determine from all the evidence in this case whether or not the witnesses actually so found gold at that time and place as testified to by them, and if you believe from the evidence that they did so find such gold, you should then determine whether or not it was of sufficient quantity and character and found under such conditions as to constitute a discovery, and whether such finding would justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in

the development of the property.   If you shall find and believe
from the evidence in this case that Klonos, Kelsey, and Schmidt
found the colors and particles of gold so testified to by them
in the draw or small water course on the surface of the ground
in dispute, then you should determine whether or not such
finding was of sufficient character, and found in such places,
and under such conditions, as to constitute such a discovery
of mineral as will satisfy the law.

You are instructed that mere indications, however strong,
are not sufficient to answer the requirements of the statute,
which requires, as one of the essential conditions of the mak-
ing of· a valid location of unappropriated public land of the
United States under the mining laws, a discovery of mineral
within the limits of the claim.   Indication of the existence of
a thing is not the thing itself.

An "indication" in the sense used in these instructions means
that which merely points to or tends to prove.. If you shall
find and believe from the evidence in this case that Kelsey,
Klonos, and Schmidt actually found colors of gold, or even
small particles of gold, in the draw or water course on the sur-
face of this claim, nearly 200 feet above the bed rock, and on
the surface of a deep layer of nonmineral bearing muck, then
you are to consider whether it was found in such quantity and
under such circumstances and conditions as to justify a man
of ordinary prudence, not necessarily a skilled miner, in the
expenditure of his time and money in the development of the
property, or whether it was so limited and of so little value,
and found under such circumstances and conditions, as merely
to indicate—to point out and tend to prove, only—that it
came from higher and adjoining lands, and had no weight,
value, or connection with any such gold on that ground as
would justify development.   Was it sufficient in quantity, and
found in such a place, and under such circumstances, as to jus-
tify a man of ordinary prudence, not necessarily a skilled miner,

in the expenditure of his time and money in the development of the property? If it was only a mere indication of gold on adjoining and higher lands, or in the neighborhood, but not on the land in controversy, if it was not found in such quantity, character, or value, nor under such circumstances or conditions, as to justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property, then it would not constitute a discovery such as would satisfy the law, and would only be an indication; and if you shall so find from the evidence in this case your decision on that point should be against the plaintiffs.

It is entirely true that the statute, requiring as a condition to a valid location the discovery of mineral within the limits of the claim, should, as between conflicting claimants to mineral lands, receive a broad and liberal construction, and so as to protect bona fide locators who have really made a discovery of mineral, whether it be under the statute providing for the location of vein or lode claims or placer claims. While the statute requiring the discovery of mineral as one of the essential conditions of a valid location of land under the mining laws should be liberally construed in behalf of bona fide locators, the statutory requirement that discovery shall be made should not be ignored, and the discovery must be of such a substantial kind and character as to convince the jury, by a fair preponderance of the evidence, that it would justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property.

Did the plaintiffs make such a discovery prior to the entry of the defendant Kelly on the ground in dispute on July 1, 1905? In answering that inquiry you may and should consider all the evidence on both sides in relation to the place where Klonos, Kelsey, and Schmidt say they found mineral on the surface; the depth to bed rock; the character of the over-

2 A.R.—35

lying muck; its depth; and the location of the pay gravels, and their depth from the surface. You should consider all the evidence offered by miners and others in relation to the character of the so-called "muck," its mineral or nonmineral bearing quality, and whether colors or small particles of gold found there are mere indications of minerals in the neighborhood, or whether alone, and without the subsequent means of information that gold existed nearly 200 feet below on bed rock, they would justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property. You should consider the geological and natural conditions of the ground as shown by the evidence. After considering all the evidence in relation thereto, you should determine: (1) Did the plaintiffs or their agents, Klonos and Kelsey, and the witness Schmidt find any gold on the surface, as so testified to by them? And (2) if they did, was it of such quantity, character, and found under such circumstances and in such connection with natural conditions, as to justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property? If you find that plaintiffs or their agents did find gold on the surface, and that it was of such quantity and character, and found under such circumstances and in such connection with natural conditions as to justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property, then it was sufficient to constitute a discovery in the meaning of the law, and you should find on that question for the plaintiffs, but if you shall not so find, by a fair preponderance of the evidence, then it was insufficient, and you should find on that question against the plaintiffs and for the defendants.

4. You are further instructed that if you shall find and believe from the evidence in this case that prior to June 26, 1905,

when the defendants claim to have located the ground in dispute, and prior to July 1, 1905, when it is admitted that the defendants went into possession of the ground, and have ever since remained in possession thereof, the plaintiffs personally, or by their agent, so marked the boundaries of the claim upon the ground by stakes or other permanent monuments that the same could be readily traced, and filed their notice of location thereof with the recorder of the district in which the claim lies within 90 days from the date of the discovery of the claim, but did not make a discovery of mineral on or within the exterior boundaries of the claim, such as would justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property, then you should consider the fourth question of this case, namely, that of possession.

You are instructed that if a qualified locator shall mark the boundaries of a placer mining claim upon the ground, so that the same could be readily traced, as heretofore explained to you, and shall record his notice of location as heretofore explained to you, and shall enter into the actual possession of the claim for the purpose of making a discovery of mineral thereon, so long as he remains in the actual possession of the claim, and is engaged, in good faith, in the labor of making a discovery, he is entitled to the protection of the law. You are instructed that in this case if you find and believe from a fair preponderance of the evidence that at the time the defendant James Kelly attempted to initiate his mining location, on the 26th day of June, 1905, and at the time of his entry upon the ground on July 1, 1905, the plaintiffs in this case personally, or by their agents or servants, were in the actual possession of the ground in dispute, and were actually and in good faith engaged in the development thereof, and seeking to make a discovery of gold and other mineral thereon, then, though they had not then made a discovery of gold, they were entitled to the

possession of the ground, and had such a legal estate therein as would justify them, by reason of such actual possession and labor, to a verdict in this case. And you are further instructed that if you shall find and believe from the evidence in this case that on the 26th day of June, 1905, when the defendant first attempted to initiate his claim to the ground in dispute, and on July 1, 1905, when he entered into possession thereof, the plaintiffs were not in the actual possession of the ground in dispute, and were not then actually and in good faith endeavoring to develop the same, and to make a discovery of gold thereon, but that on July 1, 1905, the defendant James Kelly entered peaceably and without force or violence, and that the ground was then unoccupied and vacant, you are instructed that the plaintiffs would not be entitled to recover by reason of any alleged prior actual occupation of the ground, and you should find for the defendants upon that question.

You are further instructed, however, that where a prospector has marked the boundaries and recorded, as heretofore I have instructed you, and is in actual possession, and in good faith attempting to comply with the mining laws in the matter of making a discovery, and has in good faith temporarily gone away from his claim for the purpose of purchasing provisions or supplies, or for any other temporary purpose, and intending to return and resume his actual occupation, possession, and labors, then I instruct you that such temporary absence is not to be considered an abandonment of his rights to the ground, and you are instructed that any one who should enter upon his ground during such temporary absence could not initiate any right thereto. You are instructed, however, that you should view the matter of the absence of the prior occupant and the character of his actual occupancy and possession with care and caution, and if you shall find and believe from the evidence in this case that the plaintiffs, by themselves or their agents, were not in actual possession of the premises in

dispute in good faith, and had not temporarily left the same in good faith, but were merely holding the ground by reason of their former marking and recording for speculative purposes, and without being in the actual possession thereof in good faith, and attempting to make a valid discovery of mineral thereon, then you should find against them upon that question; but if you shall find that they had previously actually made a discovery as defined to you, or that they were in such actual possession in good faith, and that their absence was a temporary one and in good faith, for the purpose of purchasing provisions and supplies, with an honest intention to return to the ground and resume labor thereon, then you should find upon that question for the plaintiffs.

You are instructed that in considering the question of what constitutes possession you should consider it from the standpoint of the ground. That in controversy is a placer mineral claim. If it were a homestead, possession would be shown by erecting a habitable house, by fencing, plowing the land, raising crops, and other acts such as a farmer usually performs under similar circumstances. But it is not necessary to fence a mining claim, to plow or raise crops thereon. A placer mining claim in this camp is possessed by marking the boundaries, recording, and making a discovery of mineral, by sinking holes to discover the pay-streak, by hoisting pay-dirt, sluicing, and cleaning up. Miners sometimes erect tents or houses and reside on the claim, but such acts are not necessary to constitute a legal possession, though when performed in addition to other acts usually done in mining they are evidence of possession. You are instructed that if you shall find from the evidence in this case that during the months of May and June, till June 26, 1905, the plaintiffs by their agent, Kelsey, actually occupied the ground in controversy in this action by living there in a tent, and by cooking and sleeping thereon, and by working in good faith to develop the claim

as a mining claim, and by sinking holes thereon to discover gold, and generally in doing such acts as miners under such circumstances are obliged to do to discover gold on a claim and develop it, such occupancy and labors in good faith would constitute an actual possession.

But you are instructed that merely placing a tent and a few tools and a small supply of provisions upon a placer mining claim do not, alone and of themselves, constitute actual possession thereof; and if you shall find and believe from the evidence in this case that after the Kelsey tent, tools, and provisions were thrown off the Hill claim by Jack Pounder, the same remained unused and scattered, resting upon the surface of the upper half of the Charlton claim, and upon that portion in dispute in this action, and that when the defendant Kelly entered thereon on June 26, 1905, no use had been made thereof in working the claim or in developing the same, or seeking to use it as a mining claim, and that the tent was unoccupied, or only so occupied casually, and not for the purpose of aiding in developing the mining claim, then such tools, provisions, tent, and casual occupancy did not constitute actual possession of the placer mining claim in good faith under the law, and would not be such an actual possession as would justify you in finding on that point for the plaintiffs. If a party goes upon the mineral lands of the United States, and either establishes a settlement or works thereon without complying with the requirements of the mining laws, and relies exclusively upon his possession or work, a second party, who locates peaceably a mining claim covering any portion of the same ground, and in all respects complies with the requirements of the mining laws, is entitled to the possession of such mineral ground to the extent of his location as against the prior occupant, who is, from the time said second party has perfected his location and complied with the law, a trespasser.

You are instructed that a mere possession of a piece of min-

ing ground is only good as against an intruder, but not as against one who subsequently located the same in compliance with the mining laws. The government requires something more from one who seeks to acquire mining ground than a mere occupancy thereof in a tent with his tools and provisions; it requires work in developing the claim. But when that work has proceeded to the point where he has marked the boundaries so that they can be readily traced, has recorded his location notice, and made a discovery of mineral thereon, as I have heretofore instructed you, it is sufficient work to perfect his location; but until those three acts are consummated, the possession, to exclude other prospectors, must be actual, continuous, and in good faith, subject, of course, to reasonable absences for the purpose of renewing the miner's supplies, or otherwise aiding him in his work of development. But if, even being in possession, he stands by and allows others to enter upon his claim, peaceably and without violence, and makes no effort to continue his work, and the subsequent prospector complies with the law by marking and recording, and first discovers mineral on the ground, the law gives such first discoverer a title to the claim and mineral thereon, against which the mere possession of the surface cannot prevail; and if you shall, from the evidence in this case, so find the facts to be, then your verdict on that point should be for the defendants and against the plaintiffs.

If you shall find and believe from the evidence in this case that the plaintiffs had not, prior to the entry of the defendant Kelly on the area of ground in dispute, made a discovery of gold sufficient to satisfy the law, then I instruct you that, to exclude the defendant Kelly from a peaceable entry upon the ground to locate it as a mining claim, the plaintiffs' possession must have been actual, by the presence of themselves or agents on the ground, in good faith seeking to develop it by making a discovery of mineral thereon. Mere casual visits to

the ground by Kelsey, plaintiffs' agent, and the leaving upon the ground, unused, of a tent, tools, and provisions, would not be such actual possession as would exclude the peaceable entry of defendant, and if you so find the facts from the evidence in this case you should find against the plaintiffs on that point.