[L. A. No. 1284.  Department One.—August 18, 1904.]

# F. F. WEED et al., Appellants, v. WALTER SNOOK et al., Respondents.

MINING CLAIMS—LOCATION OF OIL-LANDS—DISCOVERY—RIGHT OF TRANS-
FER.—Though mere surface indications, such as seepage of oil, is
ordinarily not a sufficient discovery to support a mining location of
oil-lands, and oil must be actually discovered within the limits of
the claim, yet it need not be discovered prior to the location.  A
discovery subsequently made will relate back to and perfect the
location, except so far as the rights of others may have inter-
vened; and the rights of the locators are the subject of sale and
transfer as well before as after discovery.

ID.—PROTECTION OF BONA FIDE LOCATORS—ACTIVE WORK TOWARD DIS-
COVERY.—The prior locators of oil-lands who are in actual possession
thereof, engaged in active work in erecting buildings, derricks, and
machinery for the purpose of drilling a well to discover oil thereon,
are protected against any clandestine subsequent entry and location
of the same ground made prior to the actual discovery of oil
therein.

ID.—PRIOR DISCOVERY UPON ADJOINING CLAIM—CONSOLIDATED LOCATION
—INTERFERENCE WITH BONA FIDE CLAIMANTS.—A prior discovery
upon an adjoining claim which perfects a prior location of eighty
acres of oil-lands cannot be used to support a consolidated location
of the whole one hundred and sixty acres so as to interfere with the
first locators of the adjoining eighty acres, who are in possession,
by their lessees, preparing to drill a well in good faith, with proper
diligence, for the purpose of discovering oil, when the consolidated
location is made.

ID.—ACTION TO QUIET TITLE—BURDEN UPON PLAINTIFFS.—The plaintiffs
in an action to quiet title to lands in controversy must recover,
if at all, upon the strength of their own title; and in such an action
by the consolidated claimants against the prior locators in posses-
sion of the oil-lands sued for, judgment was properly rendered for
the defendants upon the facts.

APPEAL from an order of the Superior Court of Kern
County denying a new trial.  J. W. Mahon, Judge.

The facts are stated in the opinion.

H. V. Reardan, and George E. Whitaker, for Appellants.

P. W. Bennett, and Fred E. Borton, for Respondents.

COOPER, C.—This action was brought by plaintiffs to quiet title to the south half of the northeast quarter of section 12, township 11 north, range 4 west, San Bernardino base and meridian.   The case was tried before the court, and findings filed, upon which judgment was entered for defendants.  Plaintiffs made a motion for a new trial, which was denied, and bring this appeal from the order.  The facts are fully found, and while appellants in their brief have argued the evidence and many propositions as to the mining laws and decisions applicable to certain theories of the case, yet, as the findings cannot be successfully assailed on this appeal, the case on the merits involves the single proposition as to whether or not the facts are such as to support the judgment and order.

It is admitted that in January, 1900, the land in controversy was a part of the public domain of the United States, and open to location and sale under its mineral laws and regulations.   The plaintiffs and defendants all claim under locations made, or claimed to have been made, of the land as mineral land.   The mineral claimed and conceded to exist in the land is oil.   Under the act of Congress of 1897 (29 Stats. 526—U. S. Comp. Stats. 1901, p. 1434), the location and sale of oil-land is governed by the mineral laws of the United States applicable to the location and sale of placer mining claims. The questions material to the decision of this case do not involve the marking of the locations nor the posting of notices, but the validity of the locations of the respective parties as to their respective dates and the discovery of oil in the land. It may be stated preliminarily that oil was not discovered under either location until found by sinking or driving a well down to the sand.  The mere finding of surface indications, such as seepage of oil, is not ordinarily sufficient.   Oil must have been discovered within the limits of the claim.   (*Nevada Sierra Oil Co.* v. *Home Oil Co.*, 98 Fed. 673; *Miller* v. *Chrisman*, 140 Cal. 446.)   The facts and dates as to the respective locations and discoveries in and to the eighty acres in contest are substantially as follows:  On January 20, 1900, defendants Walter Snook, John Snook, Maria B. Snook, E. A. Baer, W. L. Dixon, G. J. Plantz, F. N. Sawyer, and R. Frizelle, each being a citizen of the United States, made a location and marked the boundaries of a consolidated placer mining claim called the Pacific Placer Mining Claim, which location in-

cluded the land in contest. On the tenth day of April, 1900, William Carter, G. E. Squires, and C. J. Harvey, three of the plaintiffs, together with one Ross, each being a citizen of the United States, located a mining claim consisting of the north half of the southeast quarter of said section, being the eighty acres of land south of the land in contest, and known as Ohio No. 1 Placer Claim. On the twenty-third day of May, 1900, the said locators of the north half of the southeast quarter of said section, including three of the plaintiffs, conveyed to the Lion Oil Company, a corporation, ten acres of the said eighty located by them.

The said Lion Oil Company proceeded to develop the ten acres conveyed to it, and in October, 1900, had driven a well seven hundred and fifty feet deep, and discovered oil therein. This discovery completed and validated the location of the said north half of the southeast quarter of said section. At this time the defendants had not succeeded in discovering oil, and thus perfecting their location of the south half of the northeast quarter of said section.

On November 28, 1900, before there was any conflict as to the land in contest, the Vesuvius Oil Company, a corporation, having leased from and through defendants the said lands, went into actual possession thereof, and began the active work of preparing to drill a well therein for the discovery of oil. At this time there was still no conflict as to the land in contest, and neither plaintiffs nor any one else other than defendants were claiming any interest in or possession to the said lands so leased to the Vesuvius Oil Company.

On the twenty-fourth day of December, 1900, while the said Vesuvius Oil Company was in the quiet and peaceable possession of the lands in contest, and erecting its buildings, derricks, and machinery thereon for the purpose of drilling for oil, the plaintiffs, without permission of defendants, made out a notice in due form for a consolidated placer mining claim for the south half of the northeast quarter and the north half of the southeast quarter, being the lands embraced in both the prior locations, the Ohio No. 1 Placer Claim and the Pacific Placer Claim. The plaintiffs were citizens of the United States, and entitled to locate mineral lands. They properly marked the location of the claim so as to indicate its boundaries and posted a notice upon the same, claiming it as Lion

No. 1 Placer Claim. At the time of so attempting to locate the entire one hundred and sixty acres, the plaintiffs had made no discovery of oil or mineral in the south half of the northeast quarter, nor had they attempted to do so, and the claim to the north half of the southeast quarter had been perfected by the discovery of oil therein on the ten acres conveyed to the Lion Oil Company. They have never entered upon the land in contest nor discovered oil thereon, the only discovery being that made by the Lion Oil Company as aforesaid. On December 27, 1900, the Vesuvius Oil Company commenced the work of drilling a well upon the land in contest. On January 15, 1901, while the said lessee of defendants was in possession of the land in contest, and had expended a large amount of money in machinery and labor, and was so engaged in drilling for oil on the premises, the plaintiffs commenced this action.

In February, 1901, the said Vesuvius Oil Company discovered oil in the said well so drilled by it on said land, and at the time of the trial of this action had expended for machinery, building, and drilling for oil the sum of about ten thousand dollars.

Upon the above facts defendants were entitled to judgment. The plaintiffs must rely upon the strength of their own title. They have not expended money nor entered upon the development of the lands in contest. They have made no discovery of oil thereon. They have merely posted notices and marked the boundaries of the land in connection with the south eighty acres, which they, or at least three of them, had already located. The discovery of oil had been made upon this south eighty acres, but the plaintiffs here cannot claim such discovery as being a discovery upon the land in contest. The claim of appellant that the prior discovery on the south eighty can be availed of for the purpose of making a consolidated filing upon the whole one hundred and sixty acres cannot be upheld. If such be the law, eight parties might locate twenty acres each of a quarter-section, and each begin the work of putting in machinery and drilling on his twenty acres. It is at once apparent that the first discovery of oil by either of the parties would depend upon many circumstances, such as the means of the party, his experience, or the kind of land or rock through which he must drive his well. Some one of the eight would be the first to discover oil.

Could such party then get seven others and relocate his claim with the entire one hundred and sixty acres, as a consolidated claim, and thus claim the first discovery as to the entire one hundred and sixty acres, and obtain title thereto, to the exclusion of the seven other original locators? Such course cannot be sanctioned by the courts. It would lead to strife, riots, and the shedding of blood. And yet such is in principle the claim of the plaintiffs in this case.

The statutes and mining laws of the United States do not contemplate the forcible or clandestine entry and location of lands in the peaceable possession of other parties who have located the same in good faith, and who are endeavoring to secure their claims. (*Atherton* v. *Fowler,* 93 U. S. 513; *Nevada Sierra Oil Co.* v. *Home Oil Co.,* 98 Fed. 680; *Miller* v. *Chrisman,* 140 Cal. 449.) Cases are cited to the effect that a location cannot be made unless the mineral discovery precedes the location. Such is not the better rule, nor the rule adopted in this state. In *Miller* v. *Chrisman,* 140 Cal. 448, it was said by this court in Bank: ''It has been said that it is not necessary that discovery should precede nor coexist with posting of notice and the marking of the claims, but that a discovery subsequently made perfects the title, except so far as the rights of others may have intervened. This proposition is perhaps too well recognized to require citation of authorities, but reference may be made to 1 Lindley on Mines and Mining, sec. 330; *Jupiter Mining Co.* v. *Bodie Con. Min. Co.,* 11 Fed. 666; *North Noonday Min. Co.* v. *Orient Min. Co.,* 1 Fed. 522; *Thompson* v. *Spray,* 72 Cal. 528; *Edwin* v. *Perego,* 93 Fed. 608; *Erhardt* v. *Boaro,* 113 U. S. 527; *English* v. *Johnson,* 17 Cal. 108.''[1] It is therefore evident that the location and subsequent discovery of oil by defendants perfected their title, if plaintiffs have no intervening right. As before stated, the first attempt to in any way connect themselves with the title was by attempting to locate the land December 24, 1900.

The correct rule is stated in *Miller* v. *Chrisman,* 140 Cal. 447: ''One who thus in good faith makes his location, remains in possession, and with due diligence prosecutes his work toward a discovery is fully protected against all forms of forcible, fraudulent, surreptitious, or clandestine entries and

[1] 76 Am. Dec. 574.

intrusions upon his possession. . . . They [the locators] have
then this right of possession, and with it the right to protect
their possession against all illegal intrusions, and to work
the land for the valuable minerals it is thought to contain.
We cannot perceive why these rights may not in good faith
be made the subject of conveyance by the associates as well
before as after discovery." If defendants had been guilty
of such laches that it could have been presumed that they
had abandoned their location, and if plaintiffs had made an
open peaceable entry and acquired *bona fide* rights at a time
when defendants were not in possession thereof and prose-
cuting the work of development, the case would have been
very different. But the plaintiffs attempted to locate while
defendants were in possession and actively preparing to drill
a well. As to the time that elapsed between the date of de-
fendants' location and November of the same year, and the
reasons why defendants were not actively at work trying to
discover oil during all of said time, it is not necessary here
to inquire. As to plaintiffs, it is sufficient that defendants
were so in possession and actively at work when they at-
tempted to locate. It was said by the commissioner of the
general land office, in an opinion rendered December 18, 1900,
(*Kern River Oil Co.* v. *C. W. Clarke,* 30 L. D. 550): "One
who has made a mining location upon the public land in the
manner provided for in the statute, and in conformity with
local laws and regulations of miners, has a qualified title to
the lands, which may be bought and sold as other property.
. . . He is on the land in personal occupancy, and under color
of right, and should be allowed an opportunity to show that
the land possessed mineral in paying quantities, in which
event his right would relate back to the date of location."
And we regard the law as settled, that while a locator who
has made his location is engaged in good faith in prospecting
it for minerals, and complies with the laws as to expenditures,
and is in possession, the land is not open for location by
others. In case of petroleum lands the discovery cannot in
most cases be made except by considerable labor and expense
in sinking wells. In making the location the locator neces-
sarily takes into consideration surface indications, geological
formations, and proximity to known mines or wells producing
oil. He must make his location in good faith and use proper

diligence to make discovery of oil. If he does not do so, he will lose his rights under his location, as to parties who may afterwards in good faith acquire rights. But where the locator is in possession under his location, and is actively at work through his lessees or otherwise, and expending money for the purpose of discovering oil, his rights cannot be forfeited to third parties who attempt to make locations under such circumstances. The law must be given a liberal and equitable interpretation with a view of protecting prior rights acquired in good faith.

We advise that the order be affirmed.

Harrison, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is affirmed.

Angellotti, J., Shaw, J., Van Dyke, J.