[S. F. No. 5179.   Department Two.—November 17, 1910.]

## C. A. McLEMORE, Respondent, v. EXPRESS OIL COM-PANY (a Corporation), Appellant.

MINING CLAIM—LOCATION—ACTUAL POSSESSION.—Actual possession of a placer mining claim held under a mining location, on which the annual assessment work has been done, is not necessary for the protection of the title of the locators. This rule, however, only applies when the location is valid and complete.

ID.—LOCATION WHEN COMPLETE—DISCOVERY.—A location is valid and complete only when, after compliance with other requirements, a discovery of valuable mineral in place has been made.

ID.—LOCATION OF OIL LANDS—ACTUAL DISCOVERY OF OIL.—Under the act of Congress of February 11, 1897 (29 Stats. at Large, ch. 216, p. 526), authorizing locations of public lands containing petroleum

or other mineral oil under the laws relating to placer mining claims, a valid location cannot be effected until the actual discovery of oil, which, in the nature of things, could rarely or never be made except at the end of much time and after the expenditure of much money and work in drilling a well.

ID.—PROTECTION OF OIL LOCATOR PENDING DISCOVERY.—Under such laws, the oil locator, after marking the boundaries of his location and posting and recording his notice, is protected in his possession while he is with diligence prosecuting the labor of digging his well to determine whether or not a discovery can be made. Until the perfection of the inchoate and incomplete location by discovery, the locator has no vested rights which Congress is obliged to recognize, and the laws touching assessment work are not applicable thereto.

ID.—FAILURE TO PROSECUTE WORK OF DISCOVERY—ENTRY UNDER HOMESTEAD LAWS.—The land embraced in such an inchoate location is subject to entry under the United States homestead laws, when the prior locators cease to remain in its actual possession, and to diligently prosecute the work of discovering oil. The mere doing of annual assessment work, under the theory of a valid mineral location, is insufficient to hold the land.

ID.—WHEN ENTRY IS COMPLETE.—Under the United States homestead laws, an entry of land is complete when the applicant has made an affidavit setting forth the facts which entitle him to make such entry, has made a formal application, and paid the money required, and the certificate of entry has issued to him.

ID.—EFFECT OF HOMESTEAD ENTRY—WITHDRAWAL OF LAND—EXPLOITATION FOR MINERALS NOT PERMITTED.—A homestead entry which is *prima facie* valid removes the land, temporarily at least, out of the public domain; and one claiming it to be valuable for oil, without proof of its present value for such mineral purpose, has no right to enter thereon and explore it for the purpose of discovering oil.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, and F. E. Cook, for Appellant.

Larkins & Feemster, for Respondent.

HENSHAW, J.—The action is in ejectment. Judgment passed for plaintiff, and from that judgment and from an order denying defendant's motion for a new trial it appeals. The controversy is between a claimant to government land

under homestead entry, and a claimant to the same land under a purported mining location. An attempted location had been made by eight associates, defendant's grantors, under the placer mining laws. The valuable mineral sought to be discovered was oil. This was in January, 1906. A cabin was constructed upon the claim, its boundaries were marked, some bits of road built, and, in the language of appellant's brief, work had been done and improvements made upon the claim "far in excess of the requirements of the United States statutes with respect to assessment work and before any claim had been initiated by the plaintiff, they had expended in a direct and legitimate way many times over the amount required in the way of assessment work." Upon April 12, 1907, plaintiff first connected himself with the land by fulfilling all the requirements for entering it as a homestead. At that time, finds the court, no one of the defendant's grantors was in possession of the land. Appellant's first contention is that the evidence of location, occupation, and possession of the ground as a mining claim by defendants was sufficient to exclude it from entry by plaintiff upon the twelfth day of April, 1907, when his homestead entry was made. Undoubtedly appellant's contention in this respect would be correct if the location was valid and complete at the time of the homestead entry, since "actual possession of a mining claim held under a mining location is no more necessary for the protection of the title thereto, than it is for any other grant of the United States" (*Belk* v. *Meagher*, 104 U. S. 279), and the principle has become axiomatic that discovery and appropriation are the source of title to mining claims, and that assessment or development work is the condition of their continued possession. (27 Cyc. 588.) But this rule applies only when the location is valid and complete. And a location is valid and complete only when, after compliance with other requirements, a discovery of valuable minerals in place has been made. In the case of ordinary minerals little or no difficulty has been experienced by the courts in this matter. In practice, the miner went upon the public domain, and, before he took the trouble to stake his claim and post and record his notice he made discovery. The staking of the boundaries of the claim and the posting of notice followed such discovery. When however, Congress enacted that locations could and should be made

of public lands containing petroleum or other mineral oils under the laws relating to placer mining claims (Act Feb. 11, 1897, 29 Stats. at Large, ch. 216, p. 526, [U. S. Comp. Stats. 1901, p. 1435]), the courts were at once confronted with serious difficulty in their endeavor to obey the congressional mandate, and fit the placer mining laws to the exigencies of oil locations which, in their nature, were radically dissimilar. Thus, it is well established, that the sole power of disposition and control of the public lands being vested by the constitution of the United States in Congress (Const. U. S., art. IV, sec. 3), Congress could at any time change its policy in regard to those lands so long as vested rights were not impaired. It was fully established also that a qualified person, who had made a valid location upon a part of the public mineral domain (which valid location always, of course, included discovery), acquired vested rights, which no change in congressional policy could affect or impair, but *per contra*, that a change in policy could impair the rights of one upon the public domain who had not acquired a valid location. As has been said, in the case of other minerals, discovery preceded the demarkation of the boundaries, the posting and recording of the notice. In the case of oil, discovery, in the very nature of things, would rarely or never be made except at the end of much time and after the expenditure of much money, the discovery of oil involving the erection of a derrick, the installation of machinery and the laborious drilling of a well, frequently to the depth of three thousand feet or more. If, therefore, the placer mining laws, which were declared by Congress to be the only laws under which oil locations could be established, were to be made of any practical benefit to the oil locator, it must be by permitting him to mark the boundaries of his location and post and record his notice, and by protecting him in possession while he was with diligence prosecuting the labor of digging his well to determine whether or not a discovery could be made. So it was held by the federal courts, by the courts of some of the other states, and by this court in *Miller* v. *Chrisman,* 140 Cal. 447, [98 Am. St. Rep. 63, 73 Pac. 1084, 74 Pac. 444], to the following effect: "One who thus in good faith makes his location, remains in possession and with due diligence prosecutes his work toward a discovery, is fully pro-

tected against all forms of forcible, fraudulent, surreptitious, or clandestine entries and intrusions upon his possession. Such entry must be always peaceable, open and above board, and made in good faith, or no right can be founded upon it." (*Weed* v. *Snook,* 144 Cal. 439, [77 Pac. 1023]; *Cosmos etc. Co.* v. *Gray Eagle Oil Co.,* 104 Fed. 20, 112 Fed. 4, [50 C. C. A. 79]; 190 U. S. 301, [23 Sup. Ct. 692]; *Whiting* v. *Straup,* 17 Wyo. 1, [129 Am. St. Rep. 1093, 95 Pac. 849]; *Moffatt* v. *Blue River etc. Co.,* 33 Colo. 142, [80 Pac. 139].) But it is always to be borne in mind that until the perfection of the inchoate and incomplete location by discovery, the locator has, first, no vested rights which Congress is obliged to recognize. So that Congress may change its policy in regard to the lands to the extent even of excluding therefrom the diligent operator who has not made discovery. However inequitable such a proceeding might be, it in no way would be illegal.

Second, it is to be observed that the laws touching assessment work are not applicable to such an imperfect location. When the location is valid and complete, the law exacts the doing of but one hundred dollars of work per year, and when that is done all of the locator's rights are fully protected, whether he remains in possession longer than is necessary to do that work or not. But where the location is incomplete, no question of assessment work is involved. What the attempting locator has 'is the right to continue in possession, undisturbed by any form of hostile or clandestine entry, while he is diligently prosecuting his work to a discovery. This diligent prosecution of the work of discovery does not mean the doing of assessment work. It does not mean the pursuit of capital to prosecute the work. It does not mean any attempted holding, by cabin, lumber pile or unused derrick. It means the diligent, continuous prosecution of the work, with the expenditure of whatever money may be necessary to the end in view. Of such work, defendant's grantors were not in the prosecution up to April 12, 1907. They were not only not in the actual possession of the land, as the court finds, but the evidence discloses that what they had done was no more than to attempt to hold the land, under the theory that assessment work was adequate for that purpose. It is shown by the evidence that they were not only not engaged in the diligent prosecution of the work, but that they were not finan-

cially able so to prosecute it, and were either in search of capital to enable them to do so, or in search of a purchaser to buy out such interest as it might be thought that they had. The cases of *Cosmos etc. Co.* v. *Gray Eagle Oil Company*, 104 Fed. 20 and 112 Fed. 4, [50 C. C. A. 79], are not at all in conflict with these views. To the contrary, these views and those expressed in *Miller* v. *Chrisman*, 140 Cal. 447, [98 Am. St. Rep. 63, 73 Pac. 1084, 74 Pac. 444], *Weed* v. *Snook*, 144 Cal. 439, [77 Pac. 1023], and *New England etc. Oil Co.* v. *Congdon*, 152 Cal. 211, [92 Pac. 180], are themselves in great part based upon the opinion of the learned circuit judge in those cases. The federal cases involved conflicts between "scrippers" and oil locators, under an act which allowed the scrippers, for the land from which they had been displaced, to "select in lieu thereof an equal tract of vacant land open to entry." They endeavored to select land that was not only in the possession of oil men, but of oil men who were diligently prosecuting their work to a discovery so as to complete their locations. The circuit court held that such land so occupied and worked was not vacant land open to entry within the meaning of the act, and declared (we quote from the syllabus which correctly enunciates the determination) :

"A claimant of land entered under act June 4, 1897 (30 Stats. 36, [U. S. Comp. Stats. 1901, p. 1541]), in lieu of land situated within a forest reservation, on an affidavit stating its non-mineral character, that it was free from mining claims, and was entered for agricultural purposes, will not be granted relief in equity against another claimant in possession under an oil placer mining location, made prior to such entry, and followed up by development work, which was being prosecuted on the land when the entry was made, and resulted in valuable producing wells, where the affidavit of the entryman was also false in other particulars, the land being valueless for agricultural or grazing purposes, but situated in an oil district, and the entry being in fact made because of its supposed value for oil, although no discovery of oil had then been made thereon."

Plaintiff filing his homestead entry upon the twelfth day of April, 1907, made physical and personal entry on the fifth day of October, 1907—within the six months limited by law. Appellant contends that plaintiff had made no "entry" within

the meaning of the law until he took *possessionam pedis* on
October 5th; that up to that time he had acquired merely
a preferential right of entry over those claiming under the
homestead or agricultural laws, but not over those who might
have entered under the mining laws. In this connection
appellant expounds the different meanings which have been
given to the word "entry," and concludes that the entry of
a homesteader is not complete, within the meaning of the
law, until he has actually gone upon the ground. But this
is not the meaning of the word as employed in the statute.
In "Suggestions to Homesteaders," issued by the commis-
sioner of the general land-office, March 9, 1908 (paragraph
27, page 12), it is said: "Actual residence on the lands en-
tered must begin within six months from the date of all
homestead entries, except additional entries and adjoining
farm entries of the character mentioned in paragraphs 14
and 15, and residence with improvements and annual cultiva-
tion must continue until the entry is five years old, except in
cases thereafter mentioned, but all entrymen who actually
reside upon and cultivate lands entered by them prior to
making such entries may make final proof at any time after
entry when they can show five years' residence and cultiva-
tion." Says the supreme court of the United States in *Has-
tings etc. R. R.* v. *Whitney,* 132 U. S. 357, [10 Sup. Ct. 112]:
"Under the homestead law three things are needed to be done
in order to constitute an entry on public lands: First, the
applicant must make an affidavit setting forth the facts which
entitle him to make such entry; second, he must make a
formal application; and third, he must make payment of the
money required. When these three requisites are complied
with, and the certificate of entry is issued to him, the entry
is made—the land is entered." All of these things had been
done by plaintiff and his entry was therefore complete. What
effect did this entry have upon the right of defendant subse-
quently to enter upon the land and exploit it for minerals?

"A homestead entry," says the supreme court of the United
States, "which is *prima facie* valid removes the land, tempo-
rarily at least, out of the public domain." (*Hastings etc. Co.*
v. *Whitney,* 132 U. S. 357, [10 Sup. Ct. 112]; *United States*
v. *Turner,* 54 Fed. 228.) But appellant contends that this
language is to be construed with an exception, and that this

exception is that one who claims the land to be valuable for mineral purposes has the right, notwithstanding such homestead entry, to enter thereon and explore it for the valuable minerals it is thought to contain. Herein reliance is placed upon *McClintock* v. *Bryden,* 5 Cal. 97, with the note which is appended to that case in 63 American Decisions, page 87. But it will be found upon examination that that, and the cases like it, all arose where the land was of proved mineral value, and the decisions were based upon the national laws, which, in effect, excepted from homestead entry the mineral lands of the nation, the mineral lands being those of more value for mineral than for agricultural purposes. We know of no case, and have been cited to none, where a right of entry upon lands held under an agricultural entry has been permitted without proof of the present value of the lands for mineral purposes, merely for the purpose of exploiting them to see if perchance they possess such value. That is precisely what appellant desires here to do, and contends that it has the right to do. No discovery of oil has been made upon the lands, but defendant insists that it has the right to enter and explore them to see if there is oil therein. The decisions are against the existence of such a right. In *Lentz* v. *Victor,* 17 Cal. 273, it is declared that such an entry upon an agricultural holding can be justified and upheld only by showing, first, that the land is public land, and, second, "that it contains mines or minerals." The land department has uniformly laid down the rule to the following effect: "The burden of proof being upon the protestants (mineral claimants), they are required to show by a preponderance of testimony that the land is more valuable for mining than for agricultural purposes as a present fact; not that it might possibly hereafter develop minerals in such quantity, and of such character, as to establish its mineral value." (1 Land Dec. 561; 8 Land Dec. 440; 17 Land Dec. 103; 17 Land Dec. 274; 25 Land Dec. 223; 25 Land Dec. 349.)

For these reasons the judgment and order appealed from are affirmed.

Lorigan, J., and Melvin, J., concurred.