327 P.2d 308

**Henry C. ADAMS and G. R. Kennedy, Plaintiffs-Appellees,**

**v.**

**Russell BENEDICT, Sombrero Uranium Company, a corporation, Henry Reynolds, d/b/a Creel Drilling Company, Paul Coupey, and John Doe, Defendants-Appellants.**

**No. 6330.**

Supreme Court of New Mexico.

April 23, 1958.

Rehearing Denied July 23, 1958.

236

Henry A. Kiker, Jr., Patricio S. Sanchez, Albuquerque, for appellants.

R. F. Deacon Arledge, Charles Driscoll, Albuquerque, for appellees.

PAYNE, District Judge.

This is an appeal from a judgment or decree wherein Russell Benedict, Paul Coupey and the Sombrero Uranium Company were the defendants and were also counter-claimants, and Henry C. Adams and G. R. Kennedy were the plaintiffs and also counter-defendants. Judgment was rendered for the plaintiffs on their complaint and this appeal followed by the defendants. Hence the defendants will be referred to as appellants and the plaintiffs as the appellees.

The case was tried without a jury and findings of fact and conclusions of law were duly filed in the case.

The appellees' complaint was in the nature of a suit to quiet title to twenty-six unpatented lode mining claims in McKinley County and a petition for a restraining order against the appellants, to restrain them from interfering with the asserted possession of the premises involved. The claims consisted of three groups known as the Tomcat, Pool and Bulldog.

The appellants filed an answer and a counter-claim in which they asserted a possessory right to a certain unpatented lode mining claim known as the Sombrero No. 1. The Court found the issues in favor of the appellees and quieted the title to the three groups of claims described in the complaint.

This appeal concerns only the mining claim of the appellants, known as the Sombrero No. 1, which conflicts with the appellees' claim known as the Bulldog No. 5. The opinion in this appeal will be limited to the two claims mentioned, since the appellants did not challenge the correctness of the judgment or decree as to the other claims, and since the appellants made no claim to the other property involved in the suit.

In the summer or fall of 1955, the appellees' predecessors in interest staked out their mining claims, which included the Bulldog No. 5, and posted location notices on them; copies were filed in the office of the county clerk of McKinley county. The notices were amended in the fall of 1955, the one covering the Bulldog No. 5 being amended about October 30, 1955. Conveyances were thereafter made to appellees to these purported claims including the Bulldog No. 5. The purported location work consisted of placing four inch by four inch posts at the corner of each claim, posting the notices thereon, and in some instances the digging of discovery holes. The court found that a discovery hole was dug on each claim, including the Bulldog No. 5, by the appellees or their predecessors in interest. This finding was supported by a statement of one witness to the effect that it had been reported to him by an employee that pits were dug on each claim by a bulldozer; but he was

unable to verify this or to testify from his own knowledge that there was a pit on Bulldog No. 5. There are the positive statements of at least two witnesses that there were no pits on Bulldog No. 5 up to the date of the filing of the complaint, and we doubt that the findings of the trial court with respect to Bulldog No. 5 were supported by any substantial evidence.

In any event, it was conceded by everyone, on oral argument, before this court, that there was no pit which exposed mineral in place on Bulldog No. 5 at the time of the controversy. The evidence showed that the veins or bodies of uranium were approximately two thousand feet below the surface of the earth, and that no ten foot discovery pit would avail to expose mineral in place.

The pits which were dug on any of the the claims, other than the drill holes hereinafter mentioned, were done in the late fall of 1955.

The testimony at the trial was not confined to the two claims in contest, but evidence was introduced concerning activities of the appellees on other claims in the groups described in the complaint in an effort to show that, by an over all plan of action, work was being done looking to the development of all of the claims which would eventually include the Bulldog No. 5.

Whatever the economic reasons may be for following this over all plan of procedure, outlined by the appellees, this court is faced with the application of the existing law to the claim in question. We believe that it is fundamental law that a discovery must be made within the boundaries of the claim in order to make the location valid. We also believe that the statutory provisions requiring a discovery pit on each individual claim is a necessity to perfect the location.

In 30 U.S.C.A. § 23, Congress has provided, among other things:

"but no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located."

The words "vein or lode" mentioned in this sentence refer back to a previous sentence in the section with regard to:

"Veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits."

The appellees entered into working agreements with several other concerns by which several sections of public domain were included in a program for the development of uranium and intended to expend large sums of money over said areas. Tests for uranium had been made with geiger counters, scintillators, and electronic devices, to

which tests there were "favorable reactions" or "pretty nice readings" on the surface. This was a general finding and was not confined to any specific claim or locality so far as the record shows. An organized system of drilling was commenced whereby nine holes had already been drilled in various places on appellees' claims. In April 1957, a drilling rig was being operated on appellees' land in the same section in which the Bulldog No. 5 claim was situated, but no drilling had been done on this claim.

Although it is not in the trial court's finding, there is testimony to the effect that sometime immediately prior to the event hereinafter related, the appellees had placed a stake with a red flag on Bulldog No. 5 as an indication of the spot where appellees intended to drill a discovery hole on the claim. The appellants denied that the stake and flag were on the premises when they took possession.

The Sombrero corporation, one of the appellants, obtained a quitclaim deed to twenty-three purported unpatented lode mining claims from a third party, which included, with other property, the same area as the Bulldog No. 5 and appellants' Sombrero No. 1. The location notices were never recorded and there was no evidence to establish what, if anything, was done in connection with these locations. Evidently the appellants do not base their claims on these locations, but rather on possessory rights under the doctrine of *pedis possessio*.

On April 16, 1957, the appellants moved a large drilling rig onto Bulldog No. 4, which joined the Bulldog No. 5. This rig was observed by some of the appellees' employees and pursuant thereto they drove to Grants, New Mexico, the next morning and phoned the attorneys for the appellees. Following this conversation the employees for appellees returned to Bulldog No. 4 sometime before noon of April 17th, and advised Mr. Benedict that the appellees claimed the property in question. At this time there was no machinery belonging to the appellees on the property, and no steps had been taken at that time to do any development work whatsoever, unless it is conceded that a stake with a red flag had been placed on the premises as claimed by appellees which is not in the court's findings and which is a disputed question.

About noon of April 17th, the appellants' drill rig was moved onto Bulldog No. 5, and they started making preparations to drill on the premises. They placed two posts on the northern end of their proposed Sombrero No. 1, but had not yet had time to place the posts at the southern corners.

At about 1:30 in the morning of April 18th, appellees' employees or agents arrived at the scene in a car followed by a bulldozer. They were stopped by appellant Benedict somewhere within the boundaries

of appellants' proposed claim. Mr. Benedict protested their entry and stood in front of the bulldozer. The bulldozer was started up and carried Mr. Benedict along for some 25 to 50 yards, when it stopped. Mr. Benedict vigorously protested and resisted the entry of the bulldozer, but he was removed from in front of it and it then went in and prepared a site for the drilling rig of appellees.

Mr. Benedict then departed from the scene of action and left a Mr. Horner in charge of his operations. When the drilling rig, belonging to, or operated by, the appellees came in the next morning, Mr. Horner stood in the way and resisted its entry. The parties in charge of the drilling rig compelled him to move out of the way, although he also protested and resisted. The drilling rig was then driven onto the claim and started drilling the morning of the 18th. The appellants' drill rig also started up on the morning of the 18th, so that both drilling rigs started the same morning. In other words their actual commencement of operations were simultaneous. The appellees completed their drilling before the appellants did, but each of them continued drilling from the time they started until they each discovered uranium ore. In other words each of them actively continued in drilling operations from the morning of the 18th until each of them had completed a discovery hole.

This court must first determine whether or not there was substantial evidence to support a suit to quiet title as to the Bulldog No. 5 claim. Secondly, if we should find that the evidence was insufficient to support a suit to quiet title, it must then be determined which of the parties is entitled to possession of the premises under the doctrine of pedis possessio.

█ It is fundamental law in New Mexico that in a suit to quiet title the plaintiff must recover on the strength of his own title, and not on the weakness of the title of his adversary.

Subject to the question of actual discovery the appellees had gone through all of the motions of locating a valid mining claim known as the Bulldog No. 5, with the exception of digging a discovery shaft exposing mineral in place. It is admitted that there was no discovery shaft exposing mineral in place at the time of the controversy.

As their first point for reversal of the judgment or decree of the district court, appellants urge that there was no valid discovery of minerals and that the land was vacant and subject to appropriation by any other person who could enter peaceably at the time appellants entered and made their location.

As a further ground for sustaining this point the appellants urge that a discovery shaft was not dug disclosing mineral in

place as required by the statutes of the State of New Mexico. We shall first discuss this contention.

Regardless of the problem of what constitutes a discovery of uranium ore, the appellees meet with another obstacle. It was admitted in oral argument, before this court, that no discovery pits had been dug to a sufficient depth to disclose mineral in place. There is some doubt that there is substantial evidence to support the finding that there was a discovery pit at all on the claim in question. In any event, the findings of fact do not state that the discovery pit was 10 feet in depth nor that it disclosed mineral in place.

Chapter 61 of the Session Laws of 1957, became effective on the 12th day of March, 1957. Prior to that time the locator of any mining claim was required to sink a discovery shaft upon the claim to a depth of at least 10 feet from the lowest part of the rim of such shaft at the surface, exposing mineral in place or in the alternative to drive a tunnel, adit, or open cut upon such claim to at least 10 feet below the surface, exposing mineral in place. This was to be done within 90 days from the date of taking possession of the claim. Section 63–2–3 New Mexico Statutes Annotated 1953.

The legislature, no doubt, took cognizance of the difficulty of sinking a shaft deep enough to expose mineral in place on uranium claims. The new act provided an alternative method at the option of the locator. It provided that in lieu of a discovery shaft, tunnel or pit the locator could drill a hole one and one-half inches in diameter or more, to a depth of not less than 10 feet, provided that it cut or exposed a deposit of valuable mineral sufficient in quantity to justify a reasonably prudent man in expending money and effort in further exploration or development. The discovery hole was to be marked by a substantial post or other permanent marker placed within 5 feet of the hole, which marker was required to be at least 30 inches in height above the surface of the ground and have certain information inscribed upon it, showing the name of the claim, the claim owner, the depth of the hole, and the date the hole was drilled. An affidavit was then to be filed in the office of the county clerk, within 90 days following the location of the claim, giving certain information concerning the date of discovery, the location of the work within the claim and the nature of the mineral discovery.

The legislature must have believed that purported locations had been made on which no sufficient discovery shaft had been dug as evidenced by the following statement in the act, to-wit:

"An owner of a mining claim located prior to the effective date of this act, who has performed discovery work, may avail himself of the provisions of

this section by drilling a discovery hole, filling a discovery cut previously made and making of record the required affidavit."

■ In other words the legislature acknowledged the invalidity of purported mining claims on which no discovery shaft had been sunk to a sufficient depth to expose mineral in place.

■ At the date of the controversy the appellees had not dug their required discovery pits to a depth which would expose mineral in place nor had they taken advantage of Chapter 61 of the laws of 1957 which provided for the drilling of a hole in lieu of sinking the discovery shaft. More than 90 days had expired since the filing of the location notices and since their making a purported location of the claim. Their failure to comply with the law rendered their purported location invalid as to any rights which intervened between the time when the 90 days expired and the time when they actually drilled the discovery hole.

The statutes of the various states have different provisions relative to the sinking of a discovery shaft in connection with the location of a claim. These statutes have been upheld as a valid exercise of legislative power. The following statement is found in Morrison's Mining Rights, Sixteenth Edition, at page 42 relative to a requirement concerning discovery shafts:

"A state statute requiring a specific depth of ten feet is a valid exercise of the right of regulation allowed to the legislature under the Congressional Act.—Sissons v. Sommers, 24 Nev. 379, 55 P. 829, 77 Am.St.Rep. 815, 19 M.R. 286; Beals v. Cone, 27 Colo. 473, 62 P. 948, 20 M.R. 591, 83 Am.St.Rep. 92; United States v. Sherman [8 Cir.], 288 F. 497."

It has also been held that a failure to substantially comply with a statute relative to the sinking of a discovery shaft invalidates the claim. Hedrick v. Lee, 39 Idaho 42, 227 P. 27.

The statute in New Mexico also requires that the discovery shaft must disclose mineral in place. In Colorado, which had a statute that required the discovery shaft to show a well defined crevice, the courts have held that a lode must be disclosed in the discovery shaft. McMillen v. Ferrum Mining Co., 32 Colo. 38, 74 P. 461; Beals v. Cone, 27 Colo. 473, 62 P. 948.

It was conceded on oral argument that there was no ore in the discovery shafts on any of the claims. Hence, if there was a discovery shaft on the Bulldog No. 5 claim there was no ore in the shaft. In fact the ore body was approximately 2,000 feet below the surface of the ground. The question then presented to the court is whether or not the location was valid when there was no discovery shaft exposing mineral in

place. It is our opinion° that the location was not completed and was invalid in so far as intervening rights are concerned, since the discovery shaft was not completed within the 90 day period. The court is not passing on the question of whether or not the discovery shaft could have been completed after the 90 days in case there were no intervening rights. That situation is not presented here.

The following statement is found in 58 C.J.S. Mines and Minerals § 43, p. 90, with relation to discovery shafts on mining claims, to-wit:

"It is usually required, under these statutes, that within a given period after the posting of notice of location there shall be sunk a discovery shaft or its equivalent. The vein or lode in place on which the location is based must be disclosed in the discovery shaft or other workings; and where a shaft is sunk it must be sufficiently deep to make such disclosure. If the original discovery is made in the discovery shaft at any time before intervening rights accrue, it will support the location".

■■ Our law gives the locator ninety days within which to do his discovery work after he takes possession of the claim. His right to possession of the claim during that period of time will be protected if a discovery has been made and the other initia-

tory acts required by law have been performed. However, if he fails to do this discovery work or otherwise perfect his claim within the period set by law, and if another enters peaceably after the statutory time has expired, the other is not a trespasser since there is no valid location of the premises. We do not pass upon the question of whether or not a discovery was made. We do say that when the appellants entered the premises, the discovery work required by the statutes had not been performed and for that reason the claim was not perfected and the appellees had no rights insofar as the purported location is concerned.

The following statements of law concerning this proposition are found in Lockhart v. Johnson, 181 U.S. 516, 21 S.Ct. 665, 669, 45 L.Ed. 979:

"The locator must, also, within ninety days from the date of taking possession of the claim, sink a discovery shaft upon the claim to a depth of at least 10 feet from the lowest part of the rim of such shaft at the surface, exposing mineral in place, or he shall drive a tunnel, adit, or open cut upon such claim at least 10 feet below the surface exposing mineral in place.

\*     \*     \*     \*     \*     \*

"If the statutes are not complied with by doing the work as therein provided, and another locates before such work is done, it is a valid location. Faxon v.

Barnard, C.C., 4 F. 702; Belk v. Meagher, 104 U.S. 279, 282, 26 L.Ed. 735, 736.

\*   \*   \*   \*   \*   \*

"\* \* \* the failure of the original locator to comply with the terms of the statutes of the United States and of New Mexico by doing the work therein prescribed forfeited all his rights under such location, and the peaceable location and possession by others while such failure continued were valid, and the plaintiff therefore showed no legal title to the mine, and consequently could not recover in this action. \* \*"

Since this case was first decided by the Supreme Court of New Mexico, Lockhart v. Wills, 9 N.M. 344, 54 P. 336, and was affirmed as modified by the Supreme Court of the United States, 181 U.S. 516, 21 S. Ct. 665, 45 L.Ed. 979, the statements have great weight.

It is our conclusion that the purported location by the appellees was never perfected and the right to quiet title to the claim was not sustained. For that reason it leaves the bare question of who has the right to possession of the mining claim. It seems to us that it is not necessary to decide what constitutes a discovery of uranium in order to decide the question of right to possession. The matter resolves itself into a question of the right of possession under the doctrine of pedis possessio

for the reason that the appellants entered before the appellees had completed their discovery work.

There is an expressed invitation in the federal statutes to all qualified persons to go upon the land in question to explore for valuable mineral deposits. This exploration work, naturally, precedes the discovery of minerals. This right is explained in Union Oil Co. of California v. Smith, 249 U.S. 337, 39 S.Ct. 308, 310, 63 L.Ed. 635, as follows:

"Those who, being qualified, proceed in good faith to make such explorations and enter peaceably upon vacant lands of the United States for that purpose are not treated as mere trespassers, but as licensees or tenants at will. For since, as a practical matter, exploration must precede the discovery of minerals, and some occupation of the land ordinarily is necessary for adequate and systematic exploration, legal recognition of the pedis possessio of a bona fide and qualified prospector is universally regarded as a necessity. It is held that upon the public domain a miner may hold the place in which he may be working against all others having no better right, and while he remains in possession, diligently working towards discovery, is entitled—at least for a reasonable time—to be protected against forcible,

fraudulent, and clandestine intrusions upon his possession".

This case goes on to state that the locator must be engaged in persistent and diligent prospecting which statement reads as follows:

"Whatever the nature and extent of a possessory right before discovery, all authorities agree that such possession may be maintained only by continued actual occupancy by a qualified locator or his representatives engaged in persistent and diligent prosecution of work looking to the discovery of mineral."

A statement of the rule is also found in 58 C.J.S. Mines and Minerals § 35, p. 80:

"Owing to the necessity of a discovery on which to base the location of a mining claim, as discussed infra § 42 and the policy of the law to avoid breaches of the peace through conflicts between rival prospectors, and since, as a practical matter, exploration must precede the discovery of minerals, and some occupation of the land ordinarily is necessary for adequate and systematic exploration, it is a well-settled rule that, where one enters peaceably and in good faith to make a location upon vacant land, he is entitled to the exclusive possession of the land sought to be located for such time as may be allowed by the customs or rules of miners, or the statutes of the state or territory, to explore for minerals and complete his location; in the absence of any such statute, local custom, or rule, he has the right to exclusive possession for at least a reasonable time for such purpose; and as long as he continues to occupy the land to the exclusion of others and diligently and in good faith prosecutes the work of endeavoring to discover minerals and complete his location he is entitled to be protected against forcible, fraudulent, and surreptitious intrusions on his possession. This right is good against all the world except the government and persons claiming under it. In order to be available for this purpose, however, the possession, where that alone is relied on, must be actual, and connected with active diligent work for exploration with the bona fide intention, if mineral is found, to make a location."

■ It is recognized that no right can be initiated on the public domain by a forcible or fraudulent entry even if the person in possession has an invalid claim. But this rule does not prevent a peaceable entry by a prospector when the first occupant has not made a valid location.

This rule is stated in Thallmann v. Thomas, 8 Cir., 111 F. 277, 279, as follows:

"But every competent locator has the right to initiate a lawful claim to unappropriated public land by a peaceable adverse entry upon it while it is in the possession of those who have no superior right to acquire the title or to hold the possession."

The case of Walsh v. Henry, 38 Colo. 393, 88 P. 449, 450, is an instance where the claim of the first occupant was invalid because of the fact that his discovery cut had not been made and the time for making it had expired. The fact that the second occupant knew of the prior claim and that the land had been surveyed did not matter. The Court said:

"If defendant's location was invalid because of the absence of a discovery cut, at the time plaintiff made peaceable entry, then the territory within the boundaries of defendant's claim was at the time open to location under the mining laws, and plaintiff could lawfully initiate his location within the boundaries of the Iva C. claim, irrespective of what his belief was as to territory being unoccupied and unappropriated (Lindley on Mines, Vol. 1, § 219); and, if the Iva C. location was invalid for such reason, it was immaterial to the validity of plaintiff's location that plaintiff knew that the claim of defendant had been surveyed for patent, and the boundaries had been marked on the ground, and that situs of the claim was known to him, and that the defendant had posted his patent plats and notices. If the location of defendant was invalid for the reasons assigned, plaintiff was not a trespasser when he attempted to initiate his location therein."

Although we have not ruled on the question of the validity of the claimed discovery by the appellees, they would be in the same position as one who was in possession without a discovery insofar as intervening rights are concerned. This follows as a result of their failure to perfect their claim. For that reason the statement of the United States Supreme Court in Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 325, 64 L.Ed. 567, would be applicable. In that the court said:

"In advance of discovery an explorer in actual occupation and diligently searching for mineral is treated as a licensee or tenant at will, and no right can be initiated or acquired through a forcible, fraudulent, or clandestine intrusion upon his possession. But if his occupancy be relaxed, or be merely incidental to something other than a diligent search for mineral, and another enters peaceably, and not fraudulently or clandestinely, and makes a mineral discovery and location, the location so made is valid and must be respected accordingly."

In the case at bar the appellees were not and had not been engaged in "persistent and diligent prosecution of work looking to the discovery of mineral" on the Bulldog No. 5 claim. Nor had they been in actual, continued possession of it within the meaning of the rules laid down above. The work done on other claims does not supply the requirement. The law requires a discovery and the requisite location acts on each claim. Likewise, the possession of each claim, where no valid location has been perfected within the statutory time, must be protected by actual occupation of that identical claim and the diligent and persistent exploratory work thereon. If the occupation is relaxed under those circumstances, another may take possession of the claim if he can do so peaceably. The occupation of the second occupant, in that event, will be protected so long as he abides by this same rule.

As hereinabove stated the appellees filed their amended location in the fall of 1955. No work had been done on the claim thereafter until the date of the entry by the appellants with the possible exception of posting a red flag on the claim to mark the site where work was to be done at a later time. The appellants entered peaceably. Any knowledge they had of an overall plan for the development of the area is immaterial. Nor did the knowledge that the claim had been staked out prevent appellants from entering. Walsh v. Henry, supra. Even though they were told that someone else claimed the land before the entry, it did not prevent them from taking legal possession. To hold otherwise would allow a person to hold vast amounts of land by merely claiming it without doing the work required by the rules laid down above. It would encourage speculation and would not allow the orderly filing of mining claims anticipated by the law.

Now turning to the entry made by the appellees, we find that it was made forcibly, as above stated. The record shows that Mr. Benedict stood in front of the vehicles being brought onto the premises by the appellees. He vigorously resisted the entry of the vehicles, but to no avail. Later one of the appellants' employees resisted the entry of the well rig, but it went ahead despite his protest and resistance. These entries were forcible and did not establish any rights against the claim made by appellants. It was only when a court order was entered that the appellants relaxed their occupation and allowed the appellees to come upon the premises. This entry was not within the rules laid down above and did not establish any rights on the part of the appellees.

The only question remaining is the extent of the land that can be held by the appellants.

It has been held in some cases that the right of a lode claimant on vacant unap-

propriated land before the discovery of minerals is confined solely to the land upon which he is conducting his explorations. Gemmel v. Swain, 28 Mont. 331, 72 P. 662.

In a number of cases where a placer claim was involved and where the prospector was seeking oil, the courts have arrived at a different conclusion. In those cases several courts have held that the prospector who was actually in possession of a claim and actively and diligently conducting exploratory work, with full intent to make a location if oil was found, would be protected in his possession of the claim he was seeking to locate. It seems that the courts, in those cases, have taken a position that oil is usually located at a great depth below the surface of the earth, and that it is necessary to drill a hole in order to make a discovery. In order to preserve the peace and to provide for the orderly location of such placer claims the courts have, in several instances, taken the position that the prospector was entitled to possession of the full claim he was intending to locate, during the time that he was diligently engaged in an effort to make a discovery of oil. This rule was recognized by the Supreme Court of the United States as being the law in California. In the case of Union Oil Co. of California v. Smith, 249 U.S. 337, 39 S.Ct. 308, 310, 63 L.Ed. 635, the Supreme Court stated as follows:

"In the California courts the right of a locator before discovery while in possession of his claim and prosecuting exploration work is recognized as a substantial interest, extending not only as far as the pedis possessio but to the limits of the claim as located; so that if a duly qualified person peaceably and in good faith enters upon vacant lands of the United States prior to discovery but for the purpose of discovering oil or other valuable mineral deposits, there being no valid mineral location upon it, such person has the right to maintain possession as against violent, fraudulent, and surreptitious intrusions so long as he continues to occupy the land to the exclusion of others and diligently and in good faith prosecutes the work of endeavoring to discover mineral thereon. Miller v. Chrisman, 140 Cal. 440, 447, 73 P. 1083, 74 P. 444, 98 Am.St.Rep. 63 (case affirmed in) 197 U.S. 313, 25 S.Ct. 468, 49 L.Ed. 770; Weed v. Snook, ubi supra [144 Cal. 439, 77 P. 1023]; Merced Oil Min. Co. v. Patterson, 153 Cal. 624, 625, 96 P. 90; Id., 162 Cal. 358, 361, 122 P. 950; McLemore v. Express Oil Co., 158 Cal. 559, 562, 112 P. 59, 139 Am.St.Rep. 147."

An example of this rule is found in Miller v. Chrisman, 140 Cal. 440, 73 P. 1083, 1084, 74 P. 444, in which the Supreme Court of California made the following statement:

"It is to be remembered that it is not essential to the validity of a location that the discovery shall have preceded or shall coexist with the posting of the notice and the demarkation of boundaries. The discovery may be made subsequently, and when made operates to perfect the location against all the world, saving those whose bona fide rights have intervened. One who thus in good faith makes his location, remains in possession and with due diligence prosecutes his work toward a discovery, is fully protected against all forms of forcible, fraudulent, surreptitious, or clandestine entries and intrusions upon his possession. Such entry must always be peaceable, open, and above board, and made in good faith, or no right can be founded upon it."

This rule is explained in McLemore v. Express Oil Company, 158 Cal. 559, 112 P. 59, 60, as follows:

"As has been said, in the case of other minerals discovery preceded the demarkation of the boundaries, the posting and recording of the notice. In the case of oil, discovery, in the very nature of things, would rarely or never be made except at the end of much time and after the expenditure of much money, the discovery of oil involving the erection of a derrick and the laborious drilling of a well, frequently to the depth of 3,000 feet and more. If, therefore, the placer mining laws, which were declared by Congress to be the only laws under which oil locations could be established, were to be made of any practical benefit to the oil locator, it must be by permitting him to mark the boundaries of his location and post and record his notice, and protect him in possession while he was with diligence prosecuting the labor of digging his well to determine whether or not a discovery could be made. So it was held by the federal courts, by the courts of some of the other states, and by this court in Miller v. Chrisman, 140 Cal. [440] 447, 73 P. [1083] 1084, 74 P. 444, 98 Am.St. Rep. 63, to the following effect: 'One who thus in good faith makes his location, remains in possession and with due diligence prosecutes his work toward a discovery, is fully protected against all forms of forcible, fraudulent surreptitious, or clandestine entries and intrusions upon his possession. Such entry must be always peaceable, open and above board, and made in good faith, or no right can be founded upon it.' "

It was conceded by all parties in the case at bar that the uranium was approximately two thousand feet below the surface of the earth, and that the only knowledge of any one were indications that there

250

was uranium which indications were taken from readings on electrical instruments used by uranium miners. The appellees claimed it amounted to a discovery on their part in connection with their Bulldog No. 5 claim. The appellants did not plead a discovery for the reason that their theory of the case was that such indications did not amount to a discovery. We need not pass on this point in the light of what has been said above. We merely point it out to explain that the appellants merely prayed for possession of the premises involved. The pleadings and the proof indicated that the appellants had posted a location notice on the ground and had placed monuments on the north end of the claim at the time of the controversy, but had not yet had time to place their monuments on the south end of the claim. Both appellants and appellees have drilled their holes exposing mineral in place at an approximate depth of two thousand feet.

■ It is our opinion that the rule which has been applied with regard to the placer claims, where the prospectors were hunting for oil, presents a situation very similar to this case, even though it is a lode claim. Whether or not a discovery could be made before the hole was drilled, there is no question that the exposing of mineral in place would require the drilling of the holes as was done by the appellants and appellees. Since the appellants had taken peaceful possession of the premises and since they were actively and diligently working on the claim with bona fide intent to make a location, their right to possession of the claim described in the notice of location and as partly marked on the ground, should be protected. This court is not taking the position that such acts constitute a valid location without a discovery. We merely state that when a person is prospecting for uranium ore which lies at a great depth below the surface of the earth and where he has peacefully taken possession of the premises and is in actual possession, diligently and persistently drilling a hole in an attempt to disclose uranium in place, he should be protected in his possession to the full extent of his proposed claim as against someone with no better right.

■ It is to be understood that the court does not countenance a prospector taking possession of land in a case such as this without a discovery and holding it indefinitely without going forward with his work. He may hold it only for such time as he is diligently and persistently conducting his operations in good faith with the intent to make a discovery of mineral. An illustration of the operation of this rule is given in Whiting v. Straup, 17 Wyo. 1, 95 P. 849, 855, as follows:

" * * * Although a valid location is necessary to vest the legal right of possession in a claimant to land under the mining laws, yet possession

without location is good as against a mere intruder. As a general rule, the mere naked possession will not avail against a valid location peaceably made; and hence it confers no right against a bona fide prospector, who enters upon the land peaceably for the purpose of acquiring title thereto as a mining claim. It is well settled, also, that the right to make a location, cannot be based upon a trespass. 27 Cyc. 560, and cases cited. But, owing to the necessity of a discovery upon which to base the location of a mining claim, and the policy of the law to avoid breaches of the peace through conflicts between rival prospectors, the rule has been enunciated and may be regarded as well settled that where one seeks in good faith to make a location, he is entitled to exclusive possession of the land sought to be located for a reasonable time to complete his location, or for such time as may be allowed by the customs or rules of miners, or the statutes of the state or territory. 27 Cyc. 559; 1 Snyder on Mines, §§ 233–235; 1 Lindley on Mines (2d Ed.) § 219. To be available for the purpose aforesaid, however, the possession, where that is alone relied on, must be actual, and connected with active, diligent work of exploration, with the bona fide intention, if mineral is found, to make a location.

1 Snyder on Mines, § 236; Miller v. Chrisman, 140 Cal. 440, 73 P. 1083, 74 P. 444, 98 Am.St.Rep. 63; New England & Coalinga Oil Co. v. Congdon, 152 Cal. 211, 92 P. 180; 1 Lindley on Mines (2d Ed.) §§ 216–219. In Miller v. Chrisman, supra, after stating that a discovery might follow the other acts of location, and thus make the location good as against all the world, saving those whose bona fide rights have intervened, the court said: 'One who thus in good faith makes his location, remains in possession, and with due diligence prosecutes his work toward a discovery, is fully protected against all forms of forcible, fraudulent, surreptitious, or clandestine entries and intrusions upon his possession.' And in New England & Coalinga Oil Co. v. Congdon, supra, it was said: 'But where the alleged locator has not made a discovery, and has not retained possession for the purpose of prosecuting work looking to a discovery, his mere posting of notice and marking the boundaries upon the ground will not serve to exclude others, who may peaceably enter upon the land which he is not actually working or occupying.'

"Tested by the above rules, it is clear that at the time the predecessors in interest of the defendant company, through their agents Bijur and Straup,

252

entered upon the land, erected the drilling machinery thereon, and thereby made the discovery of gas, the plaintiffs were not maintaining, and for some time at least had not maintained, such a possession as, unaided by a valid location, would exclude other bona fide locators or prospectors. They were neither in the actual possession nor occupancy of the land, nor engaged in prospecting or exploring the same for mineral. Although they acquired whatever rights they had, under the conveyances aforesaid, in August, 1902, the only actual work done by them upon the premises was the digging the hole above mentioned in November of that year, which confessedly was not expected to uncover a deposit of oil or other mineral, but was intended chiefly, as it seems, to show their claim of possession, and also to serve as preliminary to the erection of a drilling machine. But, whatever the reason for the delay, more than a year elapsed after digging the hole before they took a machine upon the premises and commenced the actual work of exploration, and, in the meantime, the parties under whom the defendants claim had peaceably gone upon the land, and made their discovery and location; and when they went upon the land, it is conceded, and indeed alleged by the plaintiffs, that the latter and their employés were absent therefrom."

■ Accordingly the judgment of the district court insofar as it affects appellants' claim is reversed with instructions to set aside its judgment or decree and enter a judgment or decree in favor of the appellants, giving them the possessory right to the Sombrero No. 1 claim as prayed for in their cross-claim and denying the appellees claim to any part of said claim. Said judgment or decree shall recognize the possessory right of the appellants to the land sought to be located that is the full Sombrero No. 1 claim( but not to exceed a full statutory claim in size and shall recognize their right to hold a full claim under a possessory right and to go forward with the same in consistence with this opinion. The judgment or decree is affirmed as to the appellees' claims except as to the conflicts with the Sombrero No. 1 claim. Costs shall be taxed against the appellees.

It is so ordered.

Appellees have filed a motion to dismiss this appeal. We find it without merit and it is denied.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

SADLER, J., not participating.